UNITED STATES of America,
Plaintiff,

v.

Marshall CARTER and Larry C. Smith,
Defendants.

No. 4–71–Crim. 135.

United States District Court,
D. Minnesota,
Fourth Division.

Aug. 13, 1971.

ute, in violation of 21 U.S.C. § 841(a)(1). This action is now before the Court on a motion by the defendants to suppress certain evidence.

On May 14, 1971, a special agent for the Bureau of Narcotics and Dangerous Drugs obtained from a Federal Magistrate a warrant to search the apartment occupied by defendant Larry Smith. Pursuant to the warrant, Federal agents searched the apartment and seized a quantity of heroin and cocaine. Defendants now move to suppress this evidence on the ground that the warrant was obtained in violation of their rights under the Fourth Amendment to the United States Constitution.

■ It is elementary that in passing on the validity of a search warrant a reviewing court may consider only such information as was brought to the attention of the magistrate who issued the warrant. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). In the instant case the only information brought to the magistrate's attention was contained in an affidavit prepared by the special agent who obtained the warrant. The sufficiency of this affidavit, therefore, is the question which the Court must now decide.

The pertinent portion of the affidavit reads as follows:

"On May 13, 1971, I interviewed a confidential informant who advised that within the last two days he went to 678 Concordia, St. Paul, Minnesota with a second individual. The informant previously advised the second individual that the informant wished to buy heroin. The second individual advised that Larry Smith had heroin and cocaine. The second individual went to the second floor of 678 Concordia Avenue. The second individual returned and gave the informant a foil package of heroin. The informant advised that Larry Smith resides on the second floor of 678 Concordia. I ran a Narcodal test on the

Neal J. Shapiro, Asst. U. S. Atty., Minneapolis, Minn., for plaintiff.

Ronald I. Meshbesher, Robins, Meshbesher, Singer & Spence, Minneapolis, Minn., for defendants.

## MEMORANDUM DECISION

LARSON, District Judge.

Defendants are charged with possession of narcotics with intent to distrib-

powder which the informant obtained. The test indicated the powder was an opiate derivative. The second individual advised the informant that in addition to heroin, there was cocaine on the second floor.

"The informant has previously provided reliable information to agents of the Bureau of Narcotics and Dangerous Drugs. On one occassion [sic] within the last two weeks a search warrant was issued pursuant to the informants [sic] information and narcotics were seized. On another occassion [sic] within the last month the informant introduced me to an individual who he said was a dealer. I purchased heroin from the individual."

█ For the following reasons the Court has determined that this affidavit was sufficient to satisfy the requirements of the Fourth Amendment, and that the defendants' motion must therefore be denied.

The decisions of the United States Supreme Court concerning Fourth Amendment probable cause requirements for the issuance of a search warrant require that the judicial officer issuing such a warrant be supplied with sufficient information to support an independent judgment that probable cause exists for the warrant. Spinelli v. United States, *supra*; United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); Aguilar v. Texas, *supra*.

Where the information is supplied to the judicial officer by affidavit, and the affidavit, as is the situation in the instant case, is based upon information supplied by an unidentified informant, the Court has established a two point standard for judging the sufficiency of the affidavit. In Aguilar v. Texas, *supra*, the Court held that an affidavit may properly rest on such hearsay information so long as it sufficiently presents to the magistrate the underlying facts and circumstances both (1) from which the informant drew his conclusions, and (2) from which the affiant concluded that the informant was credible or his information reliable. 378 U.S. at 114, 84 S.Ct. 1509.

Because some courts subsequently paid only lip service to these requirements, the Supreme Court, in Spinelli v. United States, *supra*, endeavored to "explicate" *Aguilar* by insisting upon a strict application of the two point standard therein prescribed.[1]

█ It is therefore in light of a strict application of this two point standard that the affidavit in the instant case must be judged. Also, since the affidavit in the instant case relies on information supplied by not one, but two unidentified informants—i.e., the person referred to in the affidavit as the "informant," and the person referred to as the "second individual"— this *Aguilar* standard must be satisfied with respect to both of these individuals.[2]

1. Spinelli was convicted of interstate gambling activities. The F.B.I. search warrant affidavit alleged that Spinelli had been seen driving between Illinois and St. Louis, had parked near a certain St. Louis apartment house, and had one day entered a particular apartment; that the apartment contained two phones with different numbers; and that an allegedly "reliable" informant had told the F.B.I. that Spinelli was "operating a handbook and accepting wagers and disseminating wagering information" by means of two telephone numbers which matched the numbers in the apartment Spinelli was seen to have entered. The Court rejected the affidavit, and thus the warrant, because it did not contain a sufficient statement of the underlying circumstances (1) from which the informant concluded that Spinelli was running a bookmaking operation, and (2) from which the affiant concluded that the informant was reliable. The F.B.I.'s surveillance added nothing since everything observed was inherently harmless behavior. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L. Ed.2d 637 (1969).

2. That this is required is evident from the majority opinion in *Spinelli*, where the Court stated:
   "Moreover, if the informant came by the information indirectly, he did not explain why his sources were reliable." 393 U.S. at 416, 89 S.Ct. at 589.

It takes little analysis of the affidavit to determine that both of the *Aguilar* requirements were satisfied with respect to the person referred to as the "informant." The underlying facts and circumstances from which the informant drew his conclusions are clearly, although somewhat briefly, delineated in the affidavit: The informant advised the second individual that he wished to buy heroin; the second individual told him that Larry Smith had heroin; together they went to Smith's apartment at 678 Concordia Avenue; while the informant waited downstairs, the second individual went upstairs to Smith's apartment and returned a short time later with a package of heroin which he gave to the informant.[3] Clearly these are sufficient facts to enable a magistrate to determine that the informant was justified in concluding that there was heroin in Smith's apartment.

Similarly, the requirement that the affidavit present the underlying facts and circumstances from which the affiant concluded that the informant was reliable is also satisfied. The affidavit expressly sets forth the facts of two separate occasions within the preceding month on which the informant had supplied information which led to the seizure of narcotics. Such a recitation is clearly sufficient to satisfy this requirement.

With respect to the "second individual," the first *Aguilar* requirement is also obviously satisfied. The underlying fact upon which this second individual based his conclusion that there was heroin and cocaine in Smith's apartment is apparent from the affidavit: He went to the apartment and purchased heroin from someone inside.[4] It is indeed difficult to imagine a more direct manner in which an informant could obtain his information.

A more difficult question concerns the determination of whether the second *Aguilar* requirement is satisfied with respect to this second individual, i.e., does the affidavit sufficiently present the underlying facts and circumstances from which the affiant concluded that this second individual's information was reliable? Before making this determination, the recent Supreme Court decision in United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), must be examined. There the

---

And from Mr. Justice White's concurring opinion in the same case, where he stated:
"If the affidavit rests on hearsay—an informant's report—what is necessary under *Aguilar* is one of two things: the informant must declare either (1) that he has himself seen or perceived the fact or facts asserted; or (2) that his information is hearsay, but there is good reason for believing it. . . ." 393 U.S. at 425, 89 S.Ct. at 593.

3. Although these facts may not be specifically set forth in this manner in the affidavit, they can and should be readily inferred from it. This is especially true in light of the Supreme Court's edicts in United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), and United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). In *Ventresca* the Court stated:
"[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such

as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." 380 U.S. at 108, 85 S.Ct. at 746.

And in *Harris*, after quoting this language from *Ventresca*, the Court went on to say that:
"A policeman's affidavit 'should not be judged as an entry in an essay contest,' . . . but rather must be judged by the facts it contains." 403 U.S. at 579, 91 S.Ct. at 2080.

4. Again, although not specifically stated in the affidavit, this fact must be inferred from a "common sense and realistic" reading of it.

Court considered the problem of what showing is necessary in an affidavit to support an allegation by the affiant that an unidentified informant is reliable. The Court stated that the affidavit must provide a "factual basis" for crediting the report of an unnamed informant, but then also stated that an "averment of previous reliability" is not necessary. 403 U.S. at 577–583, 91 S.Ct. at 2079–2082.

In *Harris* a search warrant was issued pursuant to the following affidavit:

> "Roosevelt Harris has had a reputation with me for over four years as being a trafficker of nontaxpaid distilled spirits, and over this period I have received numerous information [sic] from all types of persons as to his activities. Constable Howard Johnson located a sizeable stash of illicit whiskey in an abandoned house under Harris' control during this period of time. This date, I have received information from a person who fears for their life [sic] and property should their name be revealed. I have interviewed this person, found this person to be a prudent person, and have, under a sworn verbal statement, gained the following information: This person has personal information of and has purchased illicit whiskey from within the residence described, for a period of more than 2 years, and most recently within the past 2 weeks, has knowledge of a person who purchased illicit whiskey within the past two days from the house, has personal knowledge that the illicit whiskey is consumed by purchasers in the outbuilding known and utilized as the 'dance hall,' and has seen Roosevelt Harris go to the other outbuilding, located about 50 yards from the residence, on numerous occasions, to obtain whiskey for this person and other persons." 403 U.S. at 575, 91 S.Ct. at 2078.

The Court found that this affidavit provided a sufficient factual basis to enable a magistrate to conclude that the information supplied by the unnamed informant was reliable. The specific aspects of the affidavit which provided this factual basis were stated by the Court to be: (1) The observations by the informant were personal and recent, 403 U.S. at 577, 91 S.Ct. at 2079; (2) the affiant alleged that he had knowledge of prior criminal conduct on the part of the defendant, and recited a particular prior event in support of such allegation, 403 U.S. at 580, 91 S.Ct. at 2080; and (3) the information supplied by the informant was an admission against the informant's own penal interest, 403 U.S. at 580–586, 91 S.Ct. at 2080–2083.

Similarly, in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), a decision which was relied upon quite heavily by the Court in *Harris* and which was cited with approval by the Court in *Aguilar*, the Court upheld the issuance of a search warrant based on an affidavit containing information received from an unidentified informant.[5]

---

5. The pertinent portion of the affidavit in *Jones* provided:

"In the late afternoon of Tuesday, August 20, 1957, I, Detective Thomas Didone, Jr. received information that Cecil Jones and Earline Richardson were involved in the illicit narcotic traffic and that they kept a ready supply of heroin on hand in the above mentioned apartment. The source of information also relates that the two aforementioned persons kept these same narcotics either on their person, under a pillow, on a dresser or on a window ledge in said apartment. The source of information goes on to relate that on many occasions the source of information has gone to said apartment and purchased narcotic drugs from the above mentioned persons and that the narcotics were secreated [sic] in the above mentioned places. The last time being August 20, 1957.

"Both the aforementioned persons are familiar to the undersigned and other members of the Narcotic Squad. Both have admitted to the use of narcotic drugs and display needle marks as evidence of same.

"This same information, regarding the illicit narcotic traffic, conducted by Cecil Jones and Earline Richardson, has

The Court set forth three factors gleaned from the affidavit which it felt provided a sufficient basis to support a determination by a magistrate that the information supplied by the informant was reliable: (1) The informant had previously given accurate information; (2) his story was corroborated by other sources of information; and (3) the defendant was known by the police to be a user of narcotics. 362 U.S. at 271, 80 S.Ct. 725.

In light of these decisions it is clear that the affidavit in the instant case also presents a sufficient factual basis upon which a magistrate could have relied in determining that the information supplied by the "second individual" was reliable. As in both *Harris* and *Jones*, the affidavit in the instant case recounts personal and recent observations of criminal activity by this second individual.

Also, the affidavit presents facts which plainly show that this second individual was acting against his own penal interest by supplying this information to the Government informant.[6] This same factor was given substantial weight by the Court in *Harris*. The Court stated:

> "Common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements. People do not lightly admit a crime . . . . Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support finding of probable cause to search." 403 U.S. at 583, 91 S.Ct. at 2082.

Admittedly a statement against an informant's penal interest may carry more weight when given to a police officer than when given to a person who is seemingly only a private citizen, as was the situation here; but, on the other hand, where the admission is made to a seemingly private citizen the danger that the informant may have been paid or promised a "break" in return for the information, as is sometimes the case when the admission is made to police officers, is not present. At any rate, the fact that the information supplied by this second individual was an admission against his own penal interest was a factor which the magistrate was entitled to consider in determining whether this information was reliable.

Noticeably missing from the affidavit in the instant case is an allegation by the affiant of personal knowledge of the defendant's criminal background, a factor which was relied upon by the Court in both *Harris* and *Jones*. The absence of this factor, however, is not critical, especially in light of the compelling manner in which the direct evidence of the package of heroin was supplied by the second individual in this case. This factor has far greater impact and probative value than does the circumstantiality of the knowledge of past criminal conduct in *Jones* and *Harris*.

It is this factor which the Court has determined to be of greatest significance in this aspect of the case. The second individual, accompanied by the Government informant, went to the 678 Concordia address. He was observed to enter the building and return a short time later with a package which he gave to the

---

been given to the undersigned and to other officers of the narcotic squad by other sources of information.

"Because the source of information mentioned in the opening paragraph has given information to the undersigned on previous occasion and which was correct, and because this same information is given by other sources does believe that there is now illicit narcotic drugs being secreated [sic] in the above apartment by Cecil Jones and Earline Richardson." 362 U.S. at 267–268, n. 2, 80 S.Ct. at 734.

6. It need not be explained that by purchasing heroin from someone within the Smith apartment and conveying it to the Government informant this second individual was knowingly committing, and admitting the commission of, a crime.

Government informant. By conducting a test on the contents of the package the Federal agent determined that the package contained an opiate derivative. This verification of the second individual's assertion that the package contained heroin provided a sufficient factual basis for believing that his other assertions—i.e., that Larry Smith had heroin and cocaine for sale, and that he (the second individual) had obtained this package of heroin from someone at the Smith apartment [7]—were also reliable.

Furthermore, the fact that the second individual did not know that the Government informant, with whom he was dealing, was in fact a Government informant provides an additional factor upon which a magistrate could base a determination that the second individual's information was reliable.[8] Since the second individual did not know that he was dealing with a Government informant, there would have been no reason for him to have lied in conveying this information to the informant.

This final factor also meets the defendants' argument that the second individual might have been trying to "set up" Smith when he took the informant to the vicinity of Smith's apartment. The argument is made that the second individual might have had the drugs on his person all along and only pretended to have obtained them from Smith. This would have been possible because he was not searched beforehand and the informant did not actually see him talk to Smith or anyone else in the apartment. This theory collapses, however, when one realizes that the second individual did not know that his intended purchaser was actually a Government informant. It takes that knowledge to establish the motive for a "set up" against

Smith, and it is that knowledge which the second individual did not have.

In summary, then, this Court has determined that the following four factors provided a sufficient factual basis upon which a magistrate could have relied in determining that the second *Aguilar* requirement with respect to this second individual was satisfied, i.e., that his information was reliable: (1) The observations by the second individual were personal and recent; (2) the information supplied by him was an admission against his own penal interest; (3) his story was substantiated by the fact that the package which he supplied actually did contain heroin; and (4) he did not know that the person with whom he was dealing was actually a Government informant.

■ Admittedly the affidavit may have left a "reasonable doubt" as to whether narcotics were being secreted in the Smith apartment, but this is not the standard to be applied. Since the affidavit clearly provided sufficient information to support an independent judgment by a magistrate that "probable cause" existed for the search, this challenge to the warrant must fail.

■ As an additional challenge to the warrant the defendants contend that it should be declared invalid because it did not specifically describe the place to be searched, as required by the Fourth Amendment. The warrant and the affidavit both described the premises to be searched as "the second floor 678 Concordia Avenue, St. Paul, Minnesota." Defendants argue that this description was inadequate since, although defendant Smith's apartment is situated on the second floor of the building located at 678 Concordia, the only entrance to Smith's apartment is through the rear

---

7. These assertions, although not expressly made in this manner in the affidavit, must be inferred from a "common sense and realistic" reading of it. See notes 3 and 4, *supra*.

8. Again, although the affidavit does not expressly state that the second individual

did not know that his acquaintance was a Government informant, this is the only reasonable inference which can be drawn from a "common sense and realistic" reading of it.

of the building, which entrance has the address 324 St. Albans Street. It is not disputed that the building in question is located at the intersection of Concordia Avenue and St. Albans Street and that access to the first floor is via the entrance at 678 Concordia and access to the second floor is via the entrance at 324 St. Albans. There is no indication, however, that the affiant had in mind any place other than 324 St. Albans Street when he wrote "second floor 678 Concordia Avenue." Since it is clear that these two addresses do in fact represent the same location, the fact that the address of the rear entrance was not used is not sufficient to invalidate the warrant.

The motion of the defendants to suppress the evidence obtained from Smith's apartment pursuant to the search warrant must be denied.