**UNITED STATES of America**

v.

**Fletcher Earl JONES.**

**Crim. No. 73–152.**

United States District Court,
W. D. Pennsylvania.

Nov. 16, 1973.

---

70. December 19, 1983.

Richard L. Thornburgh, U. S. Atty., Michael P. Lesniak, Sp. Atty., U. S. Dept. of Justice, Pittsburgh, Pa., for United States.

Edgar M. Snyder, Watzman, Levenson & Snyder, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

MARSH, Chief Judge.

Defendant, Fletcher Earl Jones, is charged in a four-count indictment with: possessing a firearm after being convicted of felonies in violation of 18 U.S.C.App. § 1202(a); possessing a firearm transferred to him without payment of the transfer tax (26 U.S.C. § 5811); and without filing a written application with the Secretary of the Treasury (26 U.S.C. § 5812) in violation of 26 U.S.C. §§ 5861(b), 5871; possessing a firearm made without the filing of a written application form with the Secretary of the Treasury (26 U.S.C. § 5822) in violation of 26 U.S.C. §§ 5861(c), 5871; and possessing a firearm which had not been registered to him in the National Firearms Registration and Transfer Record in violation of 26 U.S. C. §§ 5861(d), 5871. At a non-jury trial held on October 5, 1973, it appeared that the offending firearm is a 12-gauge Iver Johnson shotgun which had been so modified as to be correctly described as a sawed-off shotgun; that said firearm had travelled in interstate commerce, was operational, and was regulated by the statutes enumerated in the indictment; that defendant had been convicted of three felonies in the State of Pennsylvania prior to April 2, 1973; that the firearm in question was not registered to, or acquired by lawful making, transfer, or importation by defendant; and that defendant was in possession of said firearm on April 2, 1973.

The above facts are undisputed. Therefore, the defendant is adjudged guilty of the four counts in the indictment.

Prior to the trial the defendant filed a motion to suppress as evidence the shotgun seized on April 2, 1973 pursuant to a search warrant (DX B). Testimony was taken, after which the court orally denied the motion to suppress (Tr., p. 49), and the sawed-off shotgun seized pursuant to the search was admitted into evidence at the trial as GX 4 (Tr., p. 58). At the conclusion of the trial defendant's counsel requested time to argue the suppression issue. Defendant was granted permission to brief the new issues raised by the evidence adduced at the hearing on the motion to suppress (Tr., pp. 64–67). Upon due consideration of the briefs of the parties, it is our opinion that it was not error to deny the motion to suppress and admit the firearm into evidence at the trial.

The facts involving the search and seizure of the firearm are as follows: On March 30, 1973, United States Magistrate Robert C. Mitchell issued a search warrant (DX A) authorizing a search "at any time in the day or night by 10 P.M. Saturday March 31, 1973" of one 1970 Lincoln Continental. This warrant was based upon the following sworn affidavit of Special Agent Robert L. Maffett:

"On March 29, 1973, at about 4:00 PM at the intersection of Centre Avenue and Kirkpatrick Street while keeping Fletcher Earl Jones under surveillance in my duties as a special agent of the Bureau of Narcotics and Dangerous Drugs, I was standing about ten–fifteen feet from Jones and others by the above-described vehicle, Jones stated that he was going to protect himself from being 'ripped off.' He said he always kept his 'piece' with him. He then said, 'You want to see my piece.' He then opened

his trunk and I observed a pistol. I believe there to be a violation of Title 18, United States Code, Section 1202(a) Appendix as Jones is a convicted felon. Jones has been convicted of Auto Larceny, Auto Burglary, Carrying a Concealed Weapon, Burglary and Receiving Stolen Goods.

"Jones is known to be a narcotic trafficker and surveillance efforts to locate Jones during daylight hours have generally proved negative. However, Jones has been observed in Pittsburgh generally during early evening through night time hours."

This warrant expired by its own terms before the officers could locate and search the described automobile.

On April 2, 1973, a second warrant (DX B) was issued by Magistrate Mitchell based upon the same sworn facts as set out in the affidavit for the first warrant, plus the following additional facts:

#### "(ATTACHMENT)

"On March 30, 31, and April 1, 1973, surveillance was conducted on known residence of Fletcher Earl Jones, 1825 Bedford Avenue, Pittsburgh, Pennsylvania. The 1970 Lincoln Continental was not seen. Surveillance was discontinued April 1 at 2:00 p. m. During this period, areas where Fletcher Jones is known to frequent were also checked periodically and the 1970 Lincoln Continental, Pennsylvania Registration License Number OCO934 was not seen. On April 2, 1973, a check was made on the residence of Fletcher Jones, 1825 Bedford Avenue, Pittsburgh and the 1970 Lincoln Continental was observed. On April 2, 1973, surveillance was conducted at 9:00 a. m.

"On April 1 and 2, 1973, observations were made by Special Agent William Wildrick, Bureau of Alcohol, Tobacco and Firearms. On April 2, 1973, Special Agent Wildrick observed the 1970 Lincoln Continental in front of the residence of Fletcher Jones, 1825 Bedford Avenue, Pittsburgh, Pennsylvania at 9:00 a. m."

The second warrant authorized only a daytime search of defendant's automobile on April 2, 1973. This warrant was successfully executed resulting in the seizure of the sawed-off shotgun introduced as evidence at the trial. This was the same firearm which Agent Maffett saw in the trunk of defendant's car on March 29th (Tr., pp. 9–10).

Defendant attacks the validity of the warrants and subsequent seizure because: (1) the affidavits for both search warrants state that a pistol was concealed in the trunk of defendant's auto rather than a sawed-off shotgun, and (2) by limiting the time in which the first warrant could be executed "Magistrate Mitchell clearly indicated that probable cause to search Defendant's automobile did not exist beyond March 31, 1973."[1]

With respect to the first contention, the sawed-off shotgun was approximately 21 inches in length overall; its barrel was 12 inches in length. What Agent Maffett saw in the trunk of defendant's car on March 29, 1973 was a portion of the firearm which included the trigger, the hammer, "and a taped butt sticking out of an old boot" (Tr., pp. 9, 31–32). This portion would measure about eight inches; the barrel was concealed in the boot. The fact that the Agent may have been mistaken in his two affidavits as to the type of the firearm he observed is not a sufficient reason to suppress the evidence. An examination of the firearm involved in this case shows that it resembles, and could be mistaken for, a large or antique pistol, especially with the barrel concealed in a boot. Moreover, the specific type of firearm involved was irrelevant to the Magistrate's determination of probable cause, the only relevant facts being that defendant was a convicted felon who was

---

1. Defendant's brief received October 26, 1973, at p. 9.

in possession of some type of firearm. Agent Maffett's good faith "mistake"—that it was a "pistol" he saw in the trunk—did not destroy the basic overall integrity of his affidavit and does not require suppression of the evidence. United States ex rel. Laws v. Yeager, 448 F.2d 74, 84 (3d Cir. 1971), citing Rugendorf v. United States, 376 U.S. 528, 532, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964).

■ Turning to defendant's second contention that probable cause did not exist, it is true that four days had elapsed since Agent Maffett saw the firearm in the trunk of defendant's Continental car, and the Magistrate limited execution of the first warrant to 10:00 p. m. on March 31, 1973. The Magistrate, called by defendant, testified that because the firearm could be easily moved, he was "over-cautious" in limiting the time of the search to a short period (Tr., p. 45), and he thought he "was wrong in limiting it to as narrow a time period as I did. Consequently, I think a probable cause still existed at the time the second search warrant was issued." (Tr., p. 48).

We do not agree with defendant's contention that probable cause did not exist for the issuance of the second warrant either because four days had elapsed since Agent Maffett's original observations, or because the Magistrate himself limited execution of the first warrant to before 10:00 p. m. on March 31, 1973.

There is no principle of which we are aware that requires *ipso jure* the suppression of evidence seized pursuant to a second search warrant. Here, the second affidavit set forth that defendant's Continental could not be found on March 30, 31 and April 1, 1973 after diligent efforts to locate it. The Magistrate considered the second affidavit de novo (*cf.* Sgro v. United States, 287 U.S. 206, 211, 53 S.Ct. 138, 77 L.Ed. 260 (1932)). It contained reasonable grounds for issuing the second search warrant. Agent Maf-

fett had seen the firearm in defendant's car on March 29th; on that day he heard the defendant say "that he was going to protect himself from being 'ripped off' (robbed), and "that he *always* kept his 'piece' with him." (*Cf.* Tr., pp. 6, 30; emphasis supplied). The Agent swore in his affidavit that the defendant made those statements. We think they justified the Magistrate in finding probable cause to issue the second warrant; he could reasonably believe that the firearm the Agent saw in the trunk of defendant's Continental continued to remain there. Brinegar v. United States, 338 U.S. 160, 174–175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

Moreover, surveillance on March 30th, 31st, and April 1st, 1973, had proved fruitless; neither the defendant or his car could be located at places he was known to frequent. If he had driven his car on a trip, it is reasonably probable that the firearm remained in the trunk of his car on April 2nd.

The four-day delay between the Agent's observation and the actual search is not sufficient to vitiate probable cause. See cases set forth in Annotation at 100 A.L.R.2d 525. Of the numerous cases cited in this Annotation, and in the government's brief, none holds that an interval of less than four days from observation to issuance of a search warrant was so unreasonable as to nullify the warrant. The one case where it was held that a four-day delay necessitated suppression. People v. Siemieniec, 368 Mich. 405, 118 N.W.2d 430 (1962), is factually distinguishable because it involved one isolated liquor violation with no facts indicating a continuing violation. Here, the defendant's own statement that he "always" kept his "piece" with him shows that the violation was a continuing one. In our opinion the second warrant was legally sufficient. *Cf.* Durham v. United States, 403 F.2d 190, 194, fn. 6 (9th Cir. 1968).

An appropriate order will be entered.