Commonwealth, Appellant, *v.* DeLuca, et al.

Argued March 27, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*David Richman,* Assistant District Attorney, with him *Michael Henry,* Assistant District Attorney, *Abraham J. Gafni,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellant.

*Joseph P. Zawrotny,* for appellees.

OPINION BY PRICE, J., September 23, 1974:

On October 24, 1972, at approximately 1:20 p.m., Officer Francis Selgrath of the Philadelphia Police Department executed a search and seizure warrant inside the premises of Anna Silver, in Philadelphia. During the course of this search, which was instituted to confiscate work tallies used in an illegal numbers-writing operation, Officer Selgrath answered the Silver's telephone and informed callers, who asked for "Ann" and then placed numbers and horse bets, that Ann Silver was not present. One such caller identified herself as "Sparky" and placed 24 straight plays, worth $107.00. Officer Selgrath asked "Sparky" if she wanted Anna to return her call, and upon receiving an affirmative answer, wrote down "Sparky's" telephone number as she recited it. The number given was De-2-6851.

Officer Selgrath immediately contacted the Bell Telephone Company to determine the location of, and listed occupants for, that number. The investigation revealed that Julia and Anthony DeLuca were assigned

that telephone number, and that the phone was located at 6912 Hegerman Street. Officer Selgrath then cross-checked this information against the voter registration lists and confirmed the address provided by Bell Telephone.

At 4:25 p.m. that same afternoon, Officer Selgrath presented an affidavit for a search and seizure warrant to the Honorable Thomas Marotta, Judge of the Municipal Court, requesting permission to search the premises at 6912 Hegerman Street for any evidence of lottery paraphernalia. Judge MAROTTA approved and signed the warrant, which was then properly executed. The search pursuant to warrant revealed evidence of a substantial gambling operation conducted on the premises: specifically, "numerous sheets of paper listing numbers plays for 38 days, and approximately 30 names, in excess of 90,000 plays for in excess of $75,000.00 and Tally work for $80,000.00."[1]

On April 18, 1973, the defendant-appellees moved to suppress the physical evidence seized by Officer Selgrath, alleging that there was no probable cause to search. This motion was subsequently granted by a judge of the Municipal Court, and affirmed by the lower court after argument. The Commonwealth now appeals that order.

This court may entertain the Commonwealth's appeal because the practical effect of an order which grants the suppression of evidence gives to the order an attribute of finality sufficient to justify the Commonwealth's right of appeal. *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A. 2d 304 (1963).

The only issue presented to us is whether the facts averred in the warrant constituted probable cause to search the premises at 6912 Hegerman Street.

---

[1] Inventory of property seized on Search Warrant Control No. 143393; i.e., that which was executed at 6912 Hegerman Street.

Probable cause is said to exist where the facts and circumstances within the knowledge of the officer, and of which he has reasonably trustworthy information, are in themselves sufficient to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *Brinegar v. United States,* 338 U.S. 160 (1949); *Carroll v. United States,* 267 U.S. 132 (1925); *Commonwealth v. Hicks,* 434 Pa. 153, 253 A. 2d 276 (1969); *Commonwealth v. Bosurgi, supra.*

That a magistrate may not constitutionally issue a search warrant until he is satisfied, by reason of the information furnished him by the affiant, that there is probable cause, is well-settled law. See *Spinelli v. United States,* 393 U.S. 410 (1969); *Aguilar v. Texas,* 378 U.S. 108 (1964). The purpose of requiring sufficient information to persuade a reasonable man that probable cause for the search exists is to give the magistrate the opportunity to hear and weigh the facts and to objectively determine that there is a need to invade a person's privacy in order to enforce the law. *McDonald v. United States,* 335 U.S. 451 (1948); *Commonwealth v. Matthews,* 446 Pa. 65, 285 A. 2d 510 (1971). His decision must be based entirely on information supplied to him when he is requested to issue the warrant. *Aguilar v. Texas, supra; Giordenello v. United States,* 357 U.S. 480 (1958). And his decision must be reached after a commonsense reading of the entire affidavit. *United States v. Ventresca,* 380 U.S. 102 (1965); *Commonwealth v. Payton,* 212 Pa. Superior Ct. 254, 243 A. 2d 202 (1968). In this manner, the mandate of *Johnson v. United States,* 333 U.S. 10 (1948), to ensure the determination of probable cause by a neutral and detached magistrate rather than by an officer who is often engaged in ferreting out crime, will be safeguarded. *Accord Spinelli v. United States, supra.* This court may consider only the information

available to the magistrate who determined there was probable cause to search. *Aguilar v. Texas, supra.*

The warrant involved in the instant case was addressed to "Sparky", an unknown white female for the premises 6912 Hegerman Street, Philadelphia. The basis for the request for a warrant was the officer's belief that an illegal lottery and book-making were being conducted at that address. The probable cause section of warrant No. 143393 follows:

"On 10-24-72, at 1:22 P.M. armed with SS Warrant #143392, signed by J. Conroy, I went to the location of 3570 Belgrade St. and arrested Anna Silver w/f/60. I confiscated tally work in eccess (sic) of $1560.00 and residue of soluble paper on which I observed numbers work and which I had seen the defendant Silver put into a pot of water. During the course of the search I answered the phone numerous times and several individuals after asking for Anne placed numbers and horse bets with me. A female caller who identified he (sic) self as Sparky called and placed 24 straight plays for $107.00 total. After placing the numbers bets Sparky was asked by me if she wanted Anne to call her back and she gave her telephone number as De-2-6851. A check with Bell Telephone Company records indicates that the above number is assigned to Julia DeLuca 6912 Hegerman St. voters (sic) registration verifies that Anthony and Julia DeLuca reside at 6912 Hegerman. For this reason I firmly beleive (sic) I have sufficient reason to request this search warrant."

"Approved by ADA T. Butler<br>10-24-72"

The Pennsylvania Supreme Court has stated that in resolving doubtful or marginal cases where the issue is probable cause to search, courts should determine the answer by the preference to be accorded to warrants. *Commonwealth v. Matthews, supra.* And the United States Supreme Court has indicated that appellate

courts must pay great deference to the magistrate's determination of whether probable cause existed. *Spinelli v. United States, supra.*

The standard which a magistrate must apply to find probable cause is not as high as that needed to prove guilt in a criminal trial. The applicable standard was set forth in *Brinegar v. United States, supra* at 175-76:

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.

" 'The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' McCarthy v. De Armit, 99 Pa. St. 63, 69, quoted with approval in the Carroll opinion. 267 U.S. at 161. And this 'means less than evidence which would justify condemnation' or conviction, as MARSHALL, C. J., said for the Court more than a century ago in Locke v. United States, 7 Cranch 339, 348. Since MARSHALL'S time, at any rate, it has come to mean more than bare suspicion: Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge, and of which they had reasonably trustworthy information, [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162.

"These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed

for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." [Footnotes omitted.]

Applying the principles above enumerated—i.e., to resolve marginal cases in favor of the warrant and to determine whether there was a reasonable probability that "Sparky" and Julia DeLuca are one and the same—we find that the lower court erred in suppressing the evidence uncovered as a result of the search. We hold, therefore, that there was probable cause to search.

Officer Selgrath himself spoke with "Sparky" a few hours before the arrest was made. The telephone call which was the occasion for their talk occurred while the officer was investigating an illegal lottery and book-making operation. The probable cause section of the warrant reveals that "Sparky" placed 24 straight bets for a total of $107.00, and that the call occurred late in the day. His belief that "Sparky" initiated the call in order to place "edge-off bets" was the most reasonable probability that Officer Selgrath could contemplate. And it logically follows from his feeling that if "Sparky" did edge-work that there would be illegal pool-selling and book-making paraphernalia wherever "Sparky" was to be found.

*Brinegar v. United States, supra,* states at 176: "The rule of probable cause is a practical, nontechnical conception. . . ." And at 175: "These [probabilities] are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." It is a "prac-

tical consideration of everyday life" that a person who places a phone call and identifies himself or herself will request the intended recipient of the call to return it. And to effectuate the return call, the original caller will give his own phone number—whether business or residence. To find that "Sparky" acted in any manner other than this customary fashion is to defy the case law which requests a practical, nontechnical, reasonable and prudent interpretation of probable cause. See *Spinelli v. United States, supra; Commonwealth v. Matthews, supra; Commonwealth v. Ametrane*, 205 Pa. Superior Ct. 567, 210 A. 2d 902 (1965), *aff'd*, 422 Pa. 83, 221 A. 2d 296 (1966).

The probability that "Sparky" and Julia DeLuca are the same person became even stronger when the Bell Telephone Company and the voters' registration list verified that Julia DeLuca resided at 6912 Hegerman Street—the address which houses the telephone listed as De 2-6851.

The affidavit contains the known name, address, and telephone number of the suspects, a description of an illegal numbers operation, and an indication that the officer believed the book-making and pool-selling to be going on at the time of his request for the warrant, as well as his reason for so believing—i.e., the manner in which the bets were placed, the amount, and the time. These factors were sufficient to allow a reasonable man to believe that an illegal lottery was in operation, and constituted probable cause, as determined by Judge MAROTTA of the Municipal Court.

Although we deal primarily with "Sparky" in our discussion, as we have previously noted, we are not only dealing with the Commonwealth's appeal in the Julia DeLuca case, but also with the Commonwealth's appeal in Anthony DeLuca's case. Certainly probable cause exists, for the same reasons, in both cases.

The orders of the lower court suppressing evidence are reversed, and the cases remanded for trial.

Dissenting Opinion by Hoffman, J.:

The sole issue in this appeal is whether probable cause existed for the issuance of a search warrant, the execution of which resulted in the seizure of "numerous sheets of paper listing numbers plays for 38 days, and approximately 30 names, in excess of 90,000 plays for in excess of $75,000.00 and Tally work for $80,000.00." As a result, the defendant-appellees Julia and Anthony DeLuca were arrested and charged with thirty-eight counts of illegal lottery and conspiracy. A motion to suppress was heard by the Honorable Jerome A. Za-leski, sitting as a judge of the Municipal Court. Said motion was granted, and the Commonwealth appealed to the Court of Common Pleas. On December 12, 1973, the Honorable Ethan Allen Doty, after hearing argument, affirmed Judge Zaleski's ruling, and the instant appeal followed.

The facts adduced at the suppression hearing are as follows:

On October 24, 1972, at approximately 1:20 p.m., Officer Francis Selgrath of the Philadelphia Police Department was executing a search warrant inside the premises of Anna Silver of 3570 Belgrade Street. During the course of the search, numbers and horse bets were "placed" with Officer Selgrath who answered the telephone and informed the callers that Ann was not present. One such phone call was made by a female caller identifying herself as "Sparky". She asked for Ann, and then placed twenty-four straight plays worth $107.00. Officer Selgrath asked the caller if she wanted Ann to return her call, whereupon she gave him a phone number where she could be reached: DE 2-6851. The officer immediately checked with Bell Telephone Company and the voter registration lists and determined that the phone was located at 6912 Hegerman Street, which was owned by Julia and Anthony DeLuca.

At 4:25 p.m. on the same day, Officer Selgrath presented a search warrant detailing the aforesaid facts and requesting authorization to search the premises at 6912 Hegerman Street. Upon the officer's oath, the Honorable Thomas MAROTTA, Judge of the Municipal Court, approved and signed the warrant.[1]

In suppressing the physical evidence found at the residence of the appellees, Judge ZALESKI held that the information contained in the warrant was deficient because of the absence of any evidence that "Sparky" and Julia DeLuca were the same person, and because the warrant left to conjecture that "Sparky" was actually calling from 6912 Hegerman Street. Without setting up a surveillance to determine whether there was any evidence of a gambling operation at the defendants' residence and without calling the furnished telephone number to ascertain if the voice at the other end answered to the nickname "Sparky", Judge ZALESKI refused to supply certainty to a warrant supported merely by information that the number had been traced to the searched premises.

---

[1] The probable cause section of the warrant reads as follows: "On 10-24-72, at 1:22 p.m. armed with SS Warrant #143392, signed by J. Conroy, I went to the location of 3570 Belgrade St. and arrested Anna Silver w/f/60. I confiscated tally work in eccess (sic) of $1560.00 and residue of soluble paper on which I observed numbers work and which I had seen the defendant Silver put into a pot of water. During the course of the search I answered the phone numerous times and several individuals after asking for Anne placed numbers and horse bets with me. A female caller who identified he (sic) self as Sparky called and placed 24 straight plays for $107.00 total. After placing the numbers bets Sparky was asked by me if she wanted Anne to call her back and she gave her telephone number as De-2-6851. A check with Bell Telephone Company records indicates that the above number is assigned to Julia DeLuca 6912 Hegerman St. voters (sic) registration verifies that Anthony and Julia DeLuca reside at 6912 Hegerman. For this reason I firmly beleive (sic) I have sufficient reason to request this search warrant."

While I agree that in close cases, we should read a warrant in a common sense fashion finding legality whenever possible, *Commonwealth v. Matthews,* 446 Pa. 65, 285 A. 2d 510 (1971), this "deference" does not entitle us to plunge into conjecture and surmise. The prerequisite to the validity of a search warrant is a finding of probable cause. Such probable cause has been defined by our Supreme Court as "knowledge [on the part of the affiant] of sufficient facts and circumstances, gained through trustworthy information, to warrant a prudent man in the belief" that an offense has been or is being committed or evidence will be found at the described location. *Commonwealth v. Hicks,* 434 Pa. 153, 158, 253 A. 2d 276 (1969); *Brinegar v. United States,* 338 U.S. 160 (1949). Absent any surveillance or other corroborating evidence, I must agree with the lower court that probable cause did not exist for the issuance of a search warrant addressed to " 'Sparky', an unknown white female" for the premises at 6912 Hegerman Street.

I would affirm the order of the court below in granting defendants' motion to suppress.