Commonwealth, Appellant, *v.* Scavincky.

Submitted November 17, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Charles W. Johns* and *Robert L. Eberhardt*, Assistant District Attorneys, *John M. Tighe*, First Assistant District Attorney, and *John J. Hickton*, District Attorney, for Commonwealth, appellant.

*Albert Martin*, for appellee.

OPINION BY JACOBS, J., June 28, 1976:

The Commonwealth appeals the order of the lower court suppressing certain evidence seized by the police pursuant to a search warrant which connected appellee, Mary Lou Scavincky, with the operation of a lottery.[1] The court below found as a fact that certain alterations were made on the warrant by the police after its submission to the magistrate for execution.[2] Accordingly, the lower court ruled that the Commonwealth had failed in its burden to prove probable cause for the search. We conclude that even excluding the alterations from the affidavit of the search warrant, there was sufficient information upon which the magistrate could base a finding of probable cause.

On November 4, 1974 Trooper John J. Zelen of the Pennsylvania State Police filed an application for a search warrant with the local magistrate. The probable cause section of the affidavit is as follows:[3]

---

1. The search of appellee's apartment occurred on November 4, 1974 and uncovered an adding machine, a calculator, eight sheets of paper containing bets adding up to approximately $526.05, weekly talley sheets, and other lottery paraphernalia.

2. Unfortunately for the Commonwealth, the court below failed to make this crucial finding of fact (that the alteration occurred after the warrant had been executed by the magistrate) at the conclusion of the suppression hearing as required by Pa.R.Crim.P. 323(i). This finding of fact first appears on the record in the "Memorandum Opinion" filed by the lower court on November 12, 1975, only a few days before the submission of the case to this Court at the Pittsburgh Session. Consequently, the Commonwealth, required by our rules to submit its brief to our Court prior to November 12, argued the issue of alteration on the assumption that the alteration occurred prior to the submission of the warrant to the magistrate. In fact, the only evidence adduced at the suppression hearing indicated that the correction was made on the warrant before it was executed by the magistrate. At any rate, we feel that there is sufficient evidence to rule on this case without requiring a new brief by the Commonwealth.

3. On the original affidavit, typed by Trooper Zelen, the numbers "694" of the phone number "823-4694" appeared to have been typed by a different typewriter over certain numbers that had previously been erased.

"On 29 OCT 1974, I personally met with a confidential informant, who is reliable, and has been used in the past. This informant has supplied information to this officer and other members of the Pennsylvania State Police, on a confidential basis, that has resulted in the arrests and conviction of Julie BURDELL, Frank GREGOR, George KMETZ and Frank PIATEK, in the Courts of Allegheny County, for Lottery Operations.

This informant stated that Mary Lou SCAVINCKY, aka Lynn WOODS, runs a telephone betting operation at 2602 Brinton Manor Rd., where she takes lottery bets over the telephone from various individuals, within the confines of this apartment. These numbers bets are taken over telephone number (412) 823-4694. The informant personally knows the party involved in this operation and the location of the above telephone number.

My informant further stated that this operation runs during the week days from Monday thru Saturday, between 11:30 AM to approximately 3:30 PM. During which time SCAVINCKY aka WOODS takes the numbers bets over the telephone. My informant also stated that this apartment is rented in the name of Lynn WOODS, however the person occupying the apartment is one Mary Lou SCAVINCKY who also has a residence at 810 Spring St., N. Braddock Pa. Operates a Green Buick Le Sabre, Reg. #16574F.

On 30 OCT 1974, I personally met with my informant who took this officer and showed me the apartment at 2602 Brinton Manor Rd., at which time the name of WOODS was noted on the mail box for apartment #2. The informant then placed a telephone call to 823-4694, and placed a number of bets over this number with a person he identified as Mary Lou SCAVINCKY.

On 31 OCT 1974, I again personally met with my informant who stated that this operation was still in progress. At this time he placed a series of numbers bets over telephone number 823-4694 with a female the informant identified as SCAVINCKY.

On 1 NOV 1974, I again met with my informant who stated that he knew that the operation was still in progress, and he then placed a series of numbers bets over telephone number 823-4694 with a female he identified as SCAVINCKY.

On 4 NOV 1974, I again met with my informant who stated that this operation was still in progress, and he again placed a series of numbers bets over telephone number 823-4694 with a female he identified as SCAVINCKY.

Survelliance [sic] was conducted by this officer on the dates of 29 OCT 1974, 30 OCT 1974, 31 OCT 1974, 1 NOV 1974, and observed the vehicle which the informant describes [sic] as being operated by SCAVINCKY parked in the parking area of 2602 Brinton Manor Rd., Braddock Hills, Pa. The vehicle a Green Buick with a vinyl top bearing Pa. Reg. 16574F was observed between 12:15 PM until approximately 3:30 PM after which time the vehicle left the area.

A check of the registration number 16574F reveals that it is issued to Mary Lou SCAVINCKY, 810 Spring St., N. Braddock Pa.

As the informant personally knows the subject SCAVNIVKY, [sic] who is involved in this operation, and having personally showed this officer the location of the residence, particulars of the informants [sic] numbers bets are omitted to protect the identity of the informant."

The warrant in this case was executed long after the effective date of Pa.R.Crim.P. 2003(a) which restricts the issuing authority (the magistrate) to the evidence contained in the affidavit in his consideration of probable cause. Nevertheless, Trooper Zelen, the affiant, was permitted to testify at the suppression hearing to explain the obvious alteration of the phone number on the affidavit. He testified that after he typed the application for the search warrant, he proof-read it, and realized that he had typed the wrong phone number. He accordingly erased the erroneous digits and typed in the correct digits. On cross-examination, however, it was brought out that the new digits on the phone number had been typed by a different typewriter.

To determine the validity of the probable cause section of a search warrant, based on hearsay information, we must follow the often-quoted guidelines set forth by the United States Supreme Court in *Aguilar v. Texas*, 378 U.S. 108, 114-115 (1964): "Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the [objects to be seized] were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, was 'credible' or his information 'reliable'." (Citations and footnote omitted).

First, we are convinced that the affidavit in the present case satisfies the second prong of the *Aguilar* test in that there are sufficient circumstances in the affidavit from which to conclude that the informant was reliable. Here, the affidavit listed four persons who were arrested and convicted of lottery operation as a result of information supplied to the police by this informant. The informant's reliability was thus established. *See Commonwealth v. Lucchese*, 233 Pa. Superior Ct. 273, 335 A.2d 508 (1975).

The more difficult prong of the test we must consider

in this case is whether the affidavit sets forth sufficient circumstances to conclude that the objects to be seized (lottery paraphernalia) were where the informant claimed they were. Mere conclusions that someone is breaking the law or that certain contraband is at a specific location are insufficient to satisfy this test. *See Spinelli v. United States*, 393 U.S. 410 (1969). Moreover, in the present case, we have the additional complicating factor that according to the findings of fact of the lower court a misstatement occurred in drafting the warrant; i.e. Trooper Zelen typed the wrong phone number of defendant on the original warrant and corrected this after the execution of the warrant. In *Commonwealth v. Jones*, 229 Pa. Superior Ct. 224, 323 A.2d 879, *allocatur refused*, 229 Pa. Superior Ct. *xxxv* (1974), this Court observed that a warrant is defective only if there was a deliberate misstatement of *material* facts by the police. "A material fact is defined therein to be one without which probable cause to search would not exist. Such a distinction is, of course, desirable since the warrants are ordinarily drafted in haste from sketchy notes, and minor discrepancies are virtually unavoidable." *Id.* at 230, 323 A.2d at 881. In *Jones*, our Court proceeded to find that a material misstatement did not occur in the warrant and held that there was sufficient other information upon which to base a finding of probable cause.

In the instant case we must therefore determine whether the misstatement as to the phone number precluded a finding of probable cause.[4] Excluding the phone number from the probable cause section of the affidavit leaves us with the following circumstances to support the informant's belief that the defendant was operating a lottery: (1) the informant knew defendant's name as well as her alias; (2) the informant knew the

---

4. There was no finding by the lower court as to whether the misstatement was deliberate. However, our reading of the testimony convinces us that the misstatement was inadvertent.

address of the apartment from which the operation took place and that the apartment was rented under the assumed alias; (3) the informant knew that defendant had a residence at another location and that she owned a certain automobile; (4) the informant knew that this operation ran between 11:30 a.m. and 3:30 p.m. Monday through Saturday; (5) surveillance and investigation by Trooper Zelen disclosed that defendant did in fact reside at another location, that she owned the automobile identified by the informant, and that the vehicle was outside the apartment where the lottery operation allegedly took place between 12:15 p.m. and 3:30 p.m. on four straight days; (6) on four of the seven days preceding the issuance of the search warrant the informant in the presence of Trooper Zelen placed over the telephone a series of lottery bets with a female the informant identified as the defendant; and (7) the informant personally showed the officer the location of defendant's apartment where the lottery allegedly operated and defendant's alias was observed by the officer on the mail box for the apartment.

Similar cases have been before our Court. In *Commonwealth v. Gianelli*, 228 Pa. Superior Ct. 225, 323 A.2d 810 (1974), we upheld a search warrant for a lottery establishment on the basis of information supplied by a confidential informant in spite of the fact that the informant had not placed any bet with the defendant. There, other factors such as a detailed description of the mode of operation and other corroborating facts were considered sufficient circumstances to support the informant's belief that a lottery was in operation.

Again in *Commonwealth v. Lucchese*, supra we upheld a search warrant for a home where a betting operation took place. As in the present case, the home was under surveillance by the police and the informant in the presence of the affiant placed several bets with the defendant. However, the facts of that case do not disclose whether the affiant listed the defendant's telephone number in the affidavit of the search warrant.

Nevertheless, this Court observed that "[t]he telephone calls made by the informant in the presence of the police officer shortly before the warrant issued, the placing of bets at the time, and the informant's identification of the appellant as the person with whom he placed the bets combined with the informant's reliability to provide sufficient underlying circumstances to establish probable cause." *Id.* at 279, 335 A.2d at 511-12.

In *Commonwealth v. Williams*, 236 Pa. Superior Ct. 184, 345 A.2d 267 (1975), the probable cause section of the affidavit set forth that the informant had placed football bets with defendant over a certain telephone number on several occasions. The defendant argued that the affidavit failed to disclose the address of the defendant. Our Court held that this was not fatal to the warrant because the telephone number provided the police with information for checking the address of the defendant. *Williams* further emphasized that we must read applications for search warrants with common sense and pay deference to the magistrate's determination of probable cause. *See also, Commonwealth v. DeLuca*, 230 Pa. Superior Ct. 390, 326 A.2d 463 (1974).

We find nothing magical about a telephone number. What is important is that the affidavit set forth sufficient circumstances to show that the informant is reliable and that his belief that illegal activity is going on is substantiated. *Aguilar v. Texas*, supra. Here, the reliability of the informant is clearly established. Moreover, the informant's detailed knowledge of defendant and how the lottery operated, as well as Officer Zelen's surveillance of the apartment and observation on several occasions of the placing of bets with defendant by this *reliable* informant constitute sufficient circumstances to support the informant's belief that an illegal lottery was being operated out of defendant's apartment.

Order reversed.

DISSENTING OPINION BY SPAETH, J.:

The hearing judge found that the officer who applied

for the warrant had made changes in the affidavit after the warrant was issued. In making this finding the judge rejected the officer's testimony at the suppression hearing that the changes had been made before the warrant was issued. It is not surprising that the judge rejected the officer's testimony. On direct examination the officer said he made the changes only because he had inadvertently transposed the last two figures of the telephone number, and that when "I proof-read the affidavits then that's when I picked my mistake up and corrected it." (Record, 12A.) On cross-examination, however, it was pointed out that the last three figures of the telephone number had been changed, and that the changes had been made on a different typewriter.

The majority, "find[ing] nothing magical about a telephone number," Majority Opinion at 558, nevertheless upholds the warrant because, it concludes, even without the telephone number "the affidavit set forth sufficient circumstances to show that the informant is reliable and that his belief that illegal activity is going on is substantiated." *Id.* I cannot agree.

The way to decide whether a misstated fact (here, the telephone number) is material is to delete it from the warrant, and see what remains. The majority says that what remains includes the following: "the informant knew the address of the apartment from which the operation took place;" "the informant knew that this operation ran between 11:30 a.m. and 3:30 p.m. Monday through Saturday." (Majority opinion at 556-557.) If the informant did know these facts, however, it was because the informant knew the telephone number (the officer stated in the affidavit that "[t]he informant personally knows the party involved in this operation *and the location of the above telephone number.*") (Majority opinion at 553; emphasis added.) Delete the telephone number, and the source of the informant's knowledge becomes a matter of speculation.

Suppose the following: An informant tells an officer that he has spoken to D at telephone number 823-4777.

The officer recites this "fact" in the application, and on the strength of the application, obtains a warrant. After executing the warrant, the officer learns that D's telephone number is really 823-4694. He thereupon alters the application for the warrant, changing "823-4777" to read "823-4694."

This supposititious case is indistinguishable from the present case. The officer's conduct demonstrates that he at least considered the telephone number most material: he mentioned it five times in his application, and found it necessary to change the number as many times. True, in the present case we cannot tell what figures were replaced by the figures "694." Whatever they were, however, the telephone number as presented to the issuing authority was not the correct telephone number; it was not even close, for it was three figures off. Had the issuing authority known this fact, he could not have regarded the informant as reliable; neither, for that matter, could the officer applying for the warrant.

There is, however, another basis for my disagreement with the majority, which is more fundamental than my disagreement about the adequacy of so much of the application as remains after the telephone number is deleted.

When an officer obtains a warrant, it is our duty to construe it sympathetically, and not in a critical or legalistic spirit. *United States v. Ventresca*, 380 U.S. 102, 108 (1965); *Commonwealth v. Thomas*, 448 Pa. 42, 53, 292 A.2d 352, 357 (1972). Since the officer has acted in good faith, a court should not penalize him because he may have worded his application for the warrant in a possibly clumsy or ambiguous way. The same reasoning underlies the cases concerning misstatements in an application for a warrant. Thus, in *United States v. Jones*, 366 F. Supp. 237 (W.D. Pa. 1973), *aff'd.*, 493 F.2d 1402 (3d Cir. 1974), an agent mistakenly described a firearm as a pistol, when in fact it was a sawed-off shotgun. The court held that this mistake, made in good faith, did not invalidate the warrant. In *MacLean v. Trainor*, 365 F. Supp. 695

(W.D. Pa. 1973), the officer stated that he had received his information from an investigator for the State Bureau of Consumer Protection. In fact, the investigator had reported to the Deputy Attorney General for Consumer Protection, who had spoken to the officer. The court found the officer's misstatement of the source of information negligent and inadvertent, and held that it did not invalidate the warrant. In *Commonwealth v. Monte and Testa*, 459 Pa. 495, 329 A.2d 836 (1974), an affidavit stated that police officers had seen appellant passing papers. When questioned, the officers admitted that they had meant to say that appellants were seen passing what appeared to be papers. Our Supreme Court did not find the affidavit to be a deliberate misstatement:

> "It would be absurd to expect police officers to possess the precision of language expected of lawyers. Furthermore, a rule of exclusion is only employed for flagrant overreaching and was never contemplated to be used where an inadvertent inaccuracy may have occurred." *Id.* at 509, 329 A.2d at 843.

*See also, United States v. Curwood*, 338 F. Supp. 1104 (D.Mass. 1972) (an incomplete sentence does not invalidate an affidavit in a search warrant); *United States v. Carter*, 337 F. Supp. 604 (D.Minn. 1971) (when a search warrant contained the correct addresses of the premises to be searched, omitting the fact that the only entrance to the apartment was through another building was not a fatal defect); *Commonwealth v. Ambers*, 225 Pa. Superior Ct. 381, 310 A.2d 347 (1973); *Commonwealth v. Ametrane*, 205 Pa. Superior Ct. 567, 210 A.2d 902 (1965).

Here, there was flagrant overreaching. The officer did not simply misstate the telephone number in the application for the warrant, and then change it; he attempted by testifying falsely at the suppression hearing to conceal what he had done.

The majority refrains from this harsh statement; it blinks at the facts. True, when a judge rejects a witness's testimony, the rejection does not necessarily imply that the judge thought the witness dishonest. The judge may

have found that the witness was not in a position to see what he thought he saw, or that his memory or ability to express himself were faulty; or the judge may have rejected only the witness's opinion, as for example he must when two expert witnesses disagree. *Hussey v. May Dept. Stores, Inc.*, 238 Pa. Superior Ct. 431, 357 A.2d 635 (1976). None of these explanations fits the case here. The officer was the only witness to testify. On direct examination he said he changed the application before the warrant issued; on cross-examination this was shown to be improbable; the judge found that he changed the application after the warrant issued. The conclusion is inescapable that in rejecting the officer's factual statement, the judge found that the officer testified falsely. It is not for us as an appellate court to disagree; the judge's finding binds us, *Commonwealth v. Bruno*, Pa. , , 352 A.2d 40, 45 (1976) (citing *Commonwealth v. Garvin*, 448 Pa. 258, 269, 293 A.2d 33, 39 (1972)), and our responsibility is to apply the law as required by the finding. If we do that here, we must invalidate the warrant.

Our Supreme Court has moved decisively to protect the integrity of applications for search warrants by requiring that they be judged solely on the basis of the affidavits. Pa.R.Crim.P. 2003(a), (b). This requirement was necessary because if an application insufficient on the basis of the affidavits could be made sufficient by oral testimony, the temptation was presented to an officer to say that he had told the issuing authority something that in fact he had not told him. The decision of the majority in the present case is inconsistent if not with the letter at least with the spirit of the rules, for by upholding the warrant the majority rewards improper conduct (changing the application after the warrant issued), compounded by false testimony.

I would affirm the order of the lower court suppressing the evidence.

HOFFMAN, J., joins in this opinion.