**Orval CARE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 5239.

United States Court of Appeals Tenth Circuit.

Feb. 28, 1956.

Writ of Certiorari Denied May 14, 1956.

See 76 S.Ct. 788.

MELLOTT, District Judge.

Appellant,[1] following an extended hearing on his motion to suppress evidence alleged to have been obtained by means of an illegal search and seizure, after denial of the motion, waived trial by jury upon the charges contained in a six-count indictment[2] and submitted the issues to the court upon the evidence adduced at the hearing on the motion. He was found guilty on each count, placed on probation for five years and appealed.

The denial of the motion to suppress is crucial; for without the evidence secured in the search, the conviction cannot stand. The trial court found that none of defendant's constitutional rights had been violated in the search of a cave on his farm; that, although made without a warrant, it had been with the express consent of the defendant; that in any event the cave had been used as a distillery, separate, apart and distinct from his home; and that it was not within the curtilage. The correctness of this holding is the only issue presented.

The evidence consisted of the testimony of an agent of the Alcohol and Tobacco Unit, United States Treasury Department, called as a witness on behalf of defendant, the testimony of the defendant and a plat or diagram of the premises not drawn to scale. Many of the basic facts were stipulated. Collectively, the record tends to establish these facts:

Defendant operated a ranch in Ellis County, Oklahoma, consisting of approximately 1,320 acres of land with residence, barn, granary, shop, chicken house, fences and other improvements thereon. One hundred twenty acres of the ranch were owned by him, and the buildings, including the cave, were located on this tract. In November, 1954, agents of the Alcohol and Tobacco Unit had received information leading them to believe a still was being operated on the premises. On November 15, 1954, the

Gomer Smith, Jr., Oklahoma City, Okl., for appellant.

George Camp, Asst. U. S. Atty., Oklahoma City, Okl. (Paul W. Cress, U. S. Atty., Oklahoma City, Okl., was with him on the brief), for appellee.

Before BRATTON, Chief Judge, HUXMAN, Circuit Judge, and MELLOTT, District Judge.

1. Hereinafter defendant.

2. The offenses charged were violations of Title 26 U.S.C.A. §§ 2803, 3321 and 2913: Possession of nontaxpaid spirits; removing and concealing nontaxpaid spirits with intent to defraud; and removing and concealing nontaxpaid spirits in a place other than a bonded warehouse.

agent who was later called by the defendant as a witness and two other agents went to the ranch and found defendant and others engaged in cutting wood about 250 yards from the house. After identifying themselves and stating their mission to be to find the still, if one existed, the defendant told them "to go ahead and search all * * * [they] wanted to." The partial search made on that day did not result in locating any still or nontaxpaid spirits. It had been interrupted before being completed when the agents had been called by radio to go elsewhere on another matter. The residence and other buildings were not searched and the agents did not have a search warrant.

On December 3, 1954, 695 gallons of nontaxpaid whiskey and other property had been found by the government agents in a plum thicket approximately half a mile away from the buildings "on the end of some of the property that * * * [defendant] had something to do with."[3] The next day the agents went to defendant's home for the purpose of asking him about the whiskey; but no one was there. Looking northwest from the house, across a roadway, one of the agents decided to inspect a plowed field of from 2½ to 4 acres, inclosed in a mesh wire, hog-tight fence, while others looked elsewhere about the ranch in search of a still. They had no search warrant at that time; but they did not search the house, barn or other buildings mentioned above. They construed the permission given them on November 15, 1954, to be authorization to search the portion of the ranch which they had not searched previously.

The property concededly within the curtilage is almost surrounded by roads. The road runs generally southwest to the vicinity of the barn south of the house, turns to the northwest and circles the house, shop and granary, after which it turns again generally southwest. Across the road and to the west of the shop and house was the plowed field referred to in the preceding paragraph. Near the far side of this field was a ditch, several feet in depth. At some undisclosed time, heavy timbers had been laid across the ditch and covered with dirt. It was level with, or slightly below, the surrounding area. The entrance to the inclosure thus made had been closed with two panels of grain doors placed upright in the ditch; but they were not visible from the road or house. The cave was approximately 125 yards west or northwest of the house. The agent started walking across the plowed field following a pig trail. After walking some distance, an odor of mash was detected, the cave was discovered and entered, and an elaborate whiskey-making outfit and 3½ gallons of nontaxpaid whiskey were discovered. Subsequent investigation established that electric current from the house was being conducted to the cave through a buried electric cable, although overhead wires supplied current to the other buildings.

Defendant denied any ownership or knowledge of the 695 gallons of whiskey found in the plum thicket but admitted the ownership "of all items and property seized on his ranch in the shed or cave to the rear of his home." As to the "alleged 3½ gallons of whiskey seized in said shed or cave," he denied that it was whiskey and that it had the alcohol content stated by the government agents. It was further stipulated that "there was not a still 'set-up' * * * in the cave or shed * * * but that all the parts of a complete still, except the cooker and doubler, were found either in said shed or cave * * * or in the plum thicket where the 695 gallons were discovered * * *."[4]

Defendant testified that he had built the inclosure, which he characterized as

---

3 The quotation is from the testimony of the Alcohol Tax agent. While the record is not entirely clear, it seems the plum thicket was on land rented to a brother of defendant who lived in Woodward, Oklahoma.

4. The quotations in this paragraph are from the stipulations.

a "hog feeding outfit," some three or four years previously and used it for the purpose of soaking grain to be fed to his pigs and hogs. He also testified that he and his family had sometimes used it as a storm cellar. His evidence did not convince the trial court that the cave was within the curtilage nor are we persuaded by it. In that view we find it unnecessary to determine whether the permission to make the search, given on November 15, 1954, carried with it permission to continue the search more than two weeks later.

■■ The applicable legal principles are well established and extended discussion of them would serve no useful purpose. As this court has stated, "the protection of the Fourth Amendment securing people in their persons, houses, papers and effects against unreasonable search and seizure does not apply to an open field."[5] It does, however, apply to buildings within the curtilage which may include a garage,[6] a barn,[7] a smokehouse,[8] a chicken house[9] or similar property. Whether the place searched is within the curtilage is to be determined from the facts, including its proximity or annexation to the dwelling, its inclusion within the general enclosure surrounding the dwelling, and its use and enjoyment as an adjunct to the domestic economy of the family.[10]

■ The cave in the instant case was in a plowed field, across a road and more than a long city block from the home. It gave no evidence of ever having been used as a refuge from storms or for normal uses of a cave adjacent to a home such as the storage of foods or dairy products. The trial court chose to disbelieve the testimony of the defendant "that it was used for a storm cave," or

for the primary purpose of feeding hogs, stating: "the evidence points conclusively to the fact it was used as a distillery, * * * separate and apart and distinct from his home as one could be." As indicated above, we are not persuaded that the trial court erred in reaching its conclusion that the cave was not within the curtilage. The search has not been shown to have been within the proscription of the amendment relied upon. The evidence was therefore properly admitted. Since no question is raised as to its sufficiency to support the judgment, the conviction will not be set aside.

Affirmed.

5. Edwards v. United States, 10 Cir., 206 F.2d 855, 856, citing Hester v. United States, 265 U.S. 57, 59, 44 S.Ct. 445, 68 L.Ed. 898; cf., Martin v. United States, 5 Cir., 155 F.2d 503, 505; Dulek v. United States, 6 Cir., 16 F.2d 275; Stark v. United States, 8 Cir., 44 F.2d 946, 948.

6. Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951.

7. Walker v. United States, 5 Cir., 225 F. 2d 447.

8. Roberson v. United States, 6 Cir., 165 F. 2d 752.

9. Walker v. United States, 5 Cir., 125 F.2d 395.

10. 25 C.J.S., p. 65.