**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Edgar Clyde PRESTON, Defendant-**
**Appellant.**

**No. 72–1041.**

United States Court of Appeals,
Sixth Circuit.

Oct. 10, 1972.

Dale Quillen, Nashville, Tenn., for defendant-appellant.

Joe B. Brown, Nashville, Tenn., Charles H. Anderson, U. S. Atty., Nashville, Tenn., Ira E. Parker, III, Asst. U. S. Atty., Nashville, Tenn., on briefs, for plaintiff-appellee.

Before PHILLIPS, Chief Judge, and EDWARDS and KENT, Circuit Judges.

EDWARDS, Circuit Judge.

Appellant Preston was convicted in the United States District Court for the Middle District of Tennessee (Nashville Division). A federal court jury found him guilty of possessing an unregistered sawed-off shotgun, in violation of 26 U. S.C. § 5861(d) (1970), and he was sentenced to 15 months imprisonment.

Preston's appeal is directed to the District Judge's denial of his motion to suppress evidence, i. e., the sawed-off shotgun.

On August 1, 1971, at 6:45 p. m. two police cars responded to the scene of an altercation outside of a beer garden in Nashville, Tennessee. The responding officers found a man lying fatally wounded on the ground. Twenty or thirty people were standing nearby. Another man was brandishing a pistol. A by-stander told Hager, one of the police officers, "Check the blue Mercury . . . there are guns in it." A Mer-

cury automobile was standing 15 feet away from where the victim was lying.

Three officers thereupon went over to the Mercury and searched it. Hager described the search as follows:

"A. One officer found a pistol under the front seat passenger side. Another officer found a loaded shotgun laying on the back seat. And at that time, after the first two guns were taken, I looked under the rear seat and found a sawed-off shotgun."

Officer Hager testified as to his reasons for the search. Immediately on arrival at the scene he went to the victim lying on the ground and saw that he had been shot. His testimony continued:

"Q. Was he dead at the time or still living?

A. He was dead.

Q. And where was this in proximity to the automobile?

A. Approximately 15 feet from the automobile.

Q. And you say Mr. Hazelwood, you later found out it was Mr. Hazelwood told you to look in the Mercury and you would find some guns in the Mercury?

A. Yes, sir.

Q. Did he tell you who put the guns in the Mercury?

A. Not at that time, no, sir.

Q. And at the time he mentioned this to you, this all occurred within a period of just a few minutes, did it not?

A. Yes, sir.

Q. Did you consider the situation to be an emergency-type situation?

A. Yes, sir, I did. One man was already shot and I was anxious to find the other weapon before somebody else got hurt."

The District Judge's order of January 27, 1971, denying the motion to suppress was founded upon the "exigent circum-stances" exception to the Fourth Amendment warrant requirement:

Though Officer Hager testified that he did not at that time know that the auto belonged to the defendant and that he had no knowledge as to the reliability of the individual who suggested he look in the car, he stated that he considered the situation to be an emergency and that he wished to find "other weapons" before someone else got hurt. Considering the exigent nature of the situation in which Officer Hager found himself, coupled with the fact that the automobile in question was only some fifteen feet from the body of the murder victim, this Court is of the opinion that the presence of a shotgun "laying" on the rear seat made further search of the vehicle proper. When such further search turned up a concealed handgun, a thorough search of the remainder of the vehicle was reasonable, including removal of the rear seat.

It should be remembered that the Constitutional prohibition under which defendant would suppress the testimony herein in question is one against "unreasonable" searches and seizures. In the context of the case at bar, this Court cannot say that Officer Hager's actions were "unreasonable." Accordingly, defendant's motion to suppress is DENIED.

It should be noted that this case does not offer the difficulty of possible police perjury present in Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (Decided June 12, 1972). (*See* Judge Friendly's opinion below, Williams v. Adams, 436 F.2d 30, 35 (2d Cir. 1970)). Although Officer Hager did not recognize the person who told him that there were guns in the blue Mercury, he subsequently identified him to the court at the hearing on the motion to suppress and the informant, Hazelwood, was a witness at the trial.

Like the District Judge, we view the fact situation which Officer Hager and his fellow officers faced as a real emer-

gency. The presence of the victim, of his assailant, and probably of friends of both lends much weight to his answer as to whether he considered that he faced "an emergency-type situation." Hager's response was, "Yes, sir, I did. One man was already shot and I was anxious to find the other weapon before somebody else got hurt."

This case differs from many Fourth Amendment cases in that recourse to search warrant procedures was clearly impractical. If there were to be more shooting, it would be likely to happen long before a warrant could be procured. The police forces on the scene were certainly not such as to make it feasible to stakeout the car and send a detail for a warrant.

As is frequently true in Fourth Amendment cases, we find no directly controlling precedent to guide this court on this appeal. The Supreme Court and this court have, of course, repeatedly distinguished between searches of dwelling places and searches of automobiles on the basis of the vital interest in privacy of the former, and the mobility of the latter. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); United States v. Baxter, 361 F.2d 116 (6th Cir.), cert. denied, 385 U. S. 834, 87 S.Ct. 79, 17 L.Ed.2d 69 (1966); United States v. Nelson, 459 F.2d 884 (6th Cir. 1972).

The Supreme Court has also recognized "exigent circumstances" which warranted exceptions to the general requirement of a judicially issued search warrant as a predicate for a search. Warden v. Hayden, 387 U.S. 294, 87 S. Ct. 1642, 18 L.Ed.2d 782 (1967); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

The courts have also recognized "emergency" as a compelling reason for deviation from the warrant requirement, although frequently such recognition has been in dicta. McDonald v. United States, 335 U.S. 451, 454, 69 S.Ct. 191, 93 L.Ed. 153 (1948); United States v. Barone, 330 F.2d 543, 545 (2d Cir. 1964); Root v. Gauper, 438 F.2d 361, 364–365 (8th Cir. 1971).

The closest case to our current problem appears to us to be Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). There the Supreme Court upheld a limited search for weapons in a situation felt to be life threatening to the police officer concerned:

If this case involved police conduct subject to the Warrant Clause of the Fourth Amendment, we would have to ascertain whether "probable cause" existed to justify the search and seizure which took place. However, that is not the case. We do not retreat from our holdings that the police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure, see, e. g., Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Beck v. Ohio, 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964); Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961), or that in most instances failure to comply with the warrant requirement can only be excused by exigent circumstances, see, e. g., Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (hot pursuit); cf. Preston v. United States, 376 U.S. 364, 367–368, 84 S.Ct. 881, 884, 11 L.Ed.2d 777 (1964). But we deal here with an entire rubric of police conduct—necessarily swift action predicated upon the on-the-spot observations of the officer on the beat —which historically has not been, and as a practical matter could not be, subjected to the warrant procedure. Instead, the conduct involved in this case must be tested by the Fourth

Amendment's general proscription against unreasonable searches and seizures.

Nonetheless, the notions which underlie both the warrant procedure and the requirement of probable cause remain fully relevant in this context. In order to assess the reasonableness of Officer McFadden's conduct as a general proposition, it is necessary "first to focus upon the governmental interest which allegedly justifies official intrusion upon the constitutionally protected interests of the private citizen," for there is "no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails." Camara v. Municipal Court, 387 U.S. 523, 534–535, 536–537, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967). Terry v. Ohio, *supra* at 20, 21, 88 S.Ct. at 1879.

The governmental interest in the instant case was the officer's concern for the safety of members of the public present at the scene, either involved or uninvolved in the altercation. Additionally, there was a concern for his own safety and that of his fellow officers on the scene.

The privacy invasion was not that of a home or person. And the search of the car was not a general search or one aimed at producing evidence for prosecution. It was a search designed to defuse a potentially explosive situation by seizure of the firearms before that explosion occurred. It was limited specifically to firearms and terminated when they were seized.

We conclude, as did the District Judge, that the search which uncovered the sawed-off shotgun was "reasonable" in a constitutional sense under the standards articulated in Terry v. Ohio, *supra*.

Other issues briefed before this court were withdrawn at oral argument. We agree they should have been, since we find them without merit on this record.

The judgment of the District Court is affirmed.