Commonwealth *v.* Cubler et al., Appellants.

Submitted June 16, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Frank J. Marcone*, for appellants.

Ralph B. D'Iorio and Anna Iwachiw Vadino, Assistant District Attorneys, and Stephen J. McEwen, Jr., District Attorney, for Commonwealth, appellee.

OPINION BY WATKINS, P. J., October 28, 1975:

This is an appeal from the judgment of sentence of the Court of Common Pleas, Criminal Division, of Delaware County by the defendant-appellants, Donna Cubler and Bruce A. Ettien, Jr., after conviction by a jury of possession of narcotics, possession of narcotics with intent to deliver and conspiracy and from the dismissal of a petition for the suppression of evidence and the denial of post-trial motions.

The basis of the appeal is that the verdict is against the evidence and that the evidence seized by the police should be suppressed since it was seized as the result of an unlawful arrest and search.

On February 21, 1973, an officer of the police department of the City of Chester was investigating a complaint by a motorist that a small boy had broken his windshield. The boy was pointed out by the owner of the car and as the officer approached him, he ran away. The policeman and the owner of the car followed him to a house located at 1218 Highland Avenue, Chester. This proved to be his home. The appellant Cubler answered the door and acknowledged the boy to be her son. The officer explained the incident of the broken window to her and she made arrangements with the owner of the car to pay for the damages. The house in question was under lease to Cubler.

As the officer was leaving the area, a neighbor approached him and related the information that while the officer was approaching the Cubler home, he saw the appellant Ettien lean out of the back door of the house and toss a black bag into a dog house located at the rear of the house. The attention of the neighbor was attracted to the house when he saw the officer chasing the Cubler

child toward it. The neighbor's house is in the rear of the Cubler house about fifty to seventy feet away. The officer had personal knowledge that the house in question had been under surveillance for some time by the police for suspicion of drug activity.

The officer and the neighbor went to the rear of the house by a common walkway and the black bag could be seen sticking out from the dog house clearly visible to a passerby. The officer seized and opened the case and saw what he thought was narcotics. He radioed police headquarters, then went to the front of the house and awaited the arrival of the officers of the narcotics division.

The narcotics officers arrived and found the bag to contain narcotics. The officer then went into the house and arrested the two appellants and two other persons. A search warrant was then secured and appellant Cubler was served with the warrant. A search of the house revealed narcotics in the front and rear bedrooms and kitchen. A quantity of marijuana was found in a woman's coat in a closet and Cubler's pocketbook along with smoking pipes which contained residue of marijuana. Syringes were found in the front bedroom.

The analysis of the contents of the black bag confirmed the fact that it contained dangerous drugs which in the opinion of the officer were possessed for sale, due to the large quantity involved. The record discloses the items found in the black bag and the house, a list of which is attached to the lower court's opinion, included a large quantity of dangerous drugs from which the inference could be drawn that the possession was with the intent to deliver.

The appellants first contended that the black bag was illegally seized and searched since there was no probable cause for the search and seizure.

The officer was validly on the premises conducting police business and was given information that the appellant Ettien, positively identified by the informant

neighbor, had thrown a black bag into the dog house. The action of the officer in traveling to the dog house by a common walkway where he saw the black bag in plain view cannot constitute a search and so no unlawful S. Ct. 746 (1927) ; *Ellison v. U.S.*, 206 F.2d 476 (D.C. Cir. 1953). "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *Harris v. United States*, 390 U.S. 234, 88 S. Ct. 992 (1968). See also *Commonwealth v. Shaffer*, 447 Pa. 91, 288 A.2d 727 (1972). "Personal belongings retain their constitutional protection until their owner meaningfully abdicates control and responsibility." *Commonwealth v. Platou*, 455 Pa. 258, 312 A.2d 29 (1973). *United States v. Martin*, 386 F. 2d 213 (3d Cir. 1967) held defendant's voluntary act of throwing a pocketbook containing narcotics into a pantry of the house which he was visiting was an abandonment. In the instant case, the appellant Ettien did not reside in the house but was a visitor. With the knowledge that the house was under surveillance for drugs and the information that the black bag was abandoned on notice that the police were approaching, the officer could quite reasonably infer that criminal activity was afoot.

The appellant Cubler contends that the Commonwealth did not prove beyond a reasonable doubt that she was in possession of the narcotics found in the black bag or those found in the home. She further contends that the evidence was insufficient to sustain a conviction for conspiracy or possession of narcotics with intent to deliver.

Appellant Cubler was the lessee of the premises. Ettien was not residing in the house. He threw the black bag away as the police approached the house. The contention that she did not have possession and control is without merit. *Commonwealth v. Tirpak*, 441 Pa. 534, 272

A. 2d 476 (1971) and subsequent decisions flowing from it are readily distinguishable from the facts of this case. The defendants in *Tirpak, supra,* were guests on the premises and did not reside there. Cubler resided in the property and was its lessee. She established control as to who was on the premises and its contents. "The Act does not provide that narcotics be found on the defendant's person. A person may share a common source of narcotics where the circumstances indicate the power of control over it. . . ." *Commonwealth v. Walley,* 225 Pa. Superior Ct. 465, 468, 310 A. 2d 381, 383 (1973).

The amount of drugs seized in the black bag as well as in the house raised an inference of the street sale as opposed to personal use. It seems that under all the facts in this case it is apparent that the appellants were acting in concert.

Judgment affirmed.

---

CONCURRING OPINION BY SPAETH, J.:

The majority sanctions the search of the black bag because it was abandoned and in the plain view of the police officer. Both reasons are, on the facts here, troublesome.

Our Supreme Court has stated in *Commonwealth v. Platou,* 455 Pa. 258, 267, 312 A.2d 29, 34 (1973), *cert. denied,* 417 U.S. 976 (1974), that "[p]ersonal belongings . . . retain their constitutional protection until their owner meaningfully abdicates control or responsibility." Here, appellant Ettien placed a black bag in a dog house located on the premises he was visiting. I do not think a person can be said to have abandoned property that is inside a bag and has been placed in a structure on private property. The fact that Ettien was only a guest is irrelevant. *Jones v. United States,* 362 U.S. 257, 267 (1960). "Appellant maintained his reasonable expectation of privacy." *Platou, supra,* at 267, 312 A.2d at 34.

The difficulty I have in applying the plain view doctrine is that the police officer was legitimately on the front of the premises only, investigating the motorist's complaint about the Cubler child; this investigation did not lead the officer to the rear of the premises. "The [plain view] doctrine serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused." *Coolidge v. New Hampshire,* 403 U.S. 443, 466 (1971).

Nonetheless, I agree that the search and seizure should be sustained. Judge HOFFMAN is correct that the record in this case does not reveal the reliability of the source that led to the surveillance of the Cubler home. This would be relevant, however, only if the surveillance were the sole ingredient in the determination of probable cause. If it were, the officer, in determining whether probable cause to search existed, could not legitimately rely only upon a surveillance conducted by other officers and not itself founded on probable cause. *Whiteley v. Warden,* 401 U.S. 560, 568 (1971). Here, however, the neighbor's information, coupled with the officer's personal knowledge of the surveillance, was enough "to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Commonwealth v. De Luca,* 230 Pa. Superior Ct. 390, 396, 326 A.2d 463, 467 (1974).

I believe that once the officer was legitimately in the rear yard of the Cubler home, he could proceed to the dog house to seize the black bag to prevent its destruction. *See Schmerber v. California,* 384 U.S. 757, 770 (1966). In concluding otherwise, Judge HOFFMAN reads the emergency exception to the fourth amendment too restrictively, in my judgment. I would defer more than he to the sensible and reasonable police action in this case. Although there were three police officers on the scene, the officer near the dog house could have reasonably con-

cluded that the contraband would have been destroyed in the time it took him to walk from the front of the house to the rear to alert the other officers. The officer therefore sensibly decided to open the bag. Then, recognizing that he could not make a warrantless search of the Cubler home itself, *see Vale v. Louisiana,* 399 U.S. 30, 34 (1970), he made a sensible distinction between a dog house and a house occupied by people, and obtained a warrant for the latter.

Therefore, although I recognize that "the perennial problem of line drawing is not easily solved," *United States v. Connolly,* 479 F.2d 930, 934 (9th Cir. 1973), I join the majority in affirming the judgment of sentence.

JACOBS and CERCONE, JJ., join in this opinion.

---

### DISSENTING OPINION BY HOFFMAN, J.:

Donna Cubler and Bruce A. Ettien, Jr., appellants, appeal from their convictions on charges of possession of narcotics, possession of narcotics with intent to deliver and conspiracy. They contend that certain evidence introduced at trial was unlawfully seized from appellant Cubler's property and that certain other evidence should have been suppressed as "fruit" of that unlawful search.[1]

---

1. Appellant Cubler also claims that the evidence was insufficient in respect to her conviction for possession of narcotics with intent to deliver and conspiracy. The record reveals, however, that substantial quantities of narcotics were found within the Cubler residence and that some of this evidence was taken from her purse and coat. Additionally, it was established at trial that she was the sole lessee of the house. These facts would distinguish the instant case from *Commonwealth v. Tirpak,* 441 Pa. 534, 272 A. 2d 476 (1971), and later cases following *Tirpak.* Because I would reverse the convictions of both appellants on the basis of their search and seizure claims, I would remand for a new trial rather than discharging appellant Cubler as would be required if her claim of insufficient evidence were sustained.

The circumstances surrounding appellants' arrest are not in dispute. On February 21, 1973, Officer Thomas Chubb of the Chester Police Department responded to a complaint that several children had shattered the windshield of a passing car. The motorist pointed out to Officer Chubb a group of children who he claimed were the culprits. As the officer and the motorist approached, the children scattered and ran. The officer and the motorist followed one of the children to his home. At the house, Officer Chubb was joined by Officers Wright and Charleston. Chubb knocked, and the door was answered by appellant Cubler, the mother of the child who allegedly was involved in the rock-throwing incident. Appellant Cubler and the motorist agreed to allow Cubler to pay for the damage. Their business concluded, Chubb and the motorist started to leave when they were approached by Mr. Joseph E. Lewis who lived in a house behind the Cubler residence. Lewis reported to Officer Chubb that, although he did not know if it was significant, he had seen a man step part of the way out of the back door of the Cubler residence and shove a black portable bar case into a dog house in the rear of the Cubler home. Lewis and Officer Chubb walked to the end of the row of houses, up a common walkway to the rear of the row, across several yards and into the Cubler yard. There Chubb saw the black case partially extending out of the dog house. He picked the case up, opened it, and discovered a large quantity of drugs. One officer was stationed at the front of the house; one officer remained at the rear. Officer Chubb summoned the assistance of three additional officers from the narcotics division. The four adult occupants of the house were removed from the rear of the house. Lewis identified appellant Ettien, a visitor at the Cubler residence, as the man he had seen place the black case in the dog house. All of the occupants were arrested and taken to the stationhouse. While two officers staked-out the house, a warrant was then procured for a search of the

Cubler residence. The subsequent search produced additional quantities of narcotics and marijuana.

At the September 6, 1973 hearing on the motion to suppress, Officer Chubb testified that the search and seizure of the black case rested on the suspicious conduct reported to him by Mr. Lewis and on his personal knowledge that the Cubler residence was under surveillance by the narcotics division. He stated, further, certain unnamed users and dealers had been seen entering and leaving on certain unspecified occasions by certain unspecified persons. The court below denied the motion to suppress based on the following reasoning: "One, that there was probable cause for the arrest of Donna Cubler and Bruce Eittien [sic] on February 21, 1973; and the entry of the officers to the premises, to the extent that they reached into the dog house and secured the black case and opened it, which showed a quantity of suspected narcotics; and that this discovery properly furnished, in part, probable cause for the issuance of the search warrant and substance and support for the complaint for the issuance of the search warrant." Appellants were tried and convicted on October 17, 1973. On April 5, 1974, after post-trial motions were denied, appellant Ettien was sentenced to two concurrent 3 to 15 year terms of imprisonment for possession with intent to deliver, to pay fines of $3,000 and $1,000 and costs of prosecution on Bills of Indictment 459 and 460 respectively. Sentence on the conspiracy charge, Bill of Indictment 461, was suspended. Appellant Cubler was sentenced to serve a period of 10 years probation, to pay a fine of $500 and costs of prosecution on both Bills of Indictment 459 and 460. Sentence on the conspiracy charge, Bill of Indictment 461, was suspended. This appeal followed.

The Majority and the court below seek to justify the seizure of the bag from the dog house on theories of abandonment and plain view, citing *Commonwealth v. Platou*, 455 Pa. 258, 312 A.2d 29 (1973) and *United States*

*v. Martin*, 386 F. 2d 213 (3d Cir. 1967).[2] It is true that "[p]ersonal belongings . . . retain their constitutional protection until their owner meaningfully abdicates control or responsibility." *Commonwealth v. Platou*, supra at 267, 312 A.2d at 34.[3] But it is impossible on the facts of this case to say that one who takes an innocuous-looking black case from one structure to another on private property relinquishes his expectation of privacy. Abandonment requires more; it requires that the party surrender control in such a way as to evince or imply an intent to part with that control permanently. See *Abel v. United States*, 362 U.S. 217 (1960) ; *United States v. Minker*, 312 F. 2d 632 (3d Cir. 1963). Resort to the "abandonment exception" to the requirement that there be probable cause prior to the commencement of a search is unavailing under the facts of this case.

---

2. The facts of *United States v. Martin*, supra, distinguish that case from the instant one. In *Martin* the police had a warrant for the arrest of one Joyce Hammond and for the search of her apartment. While the officers waited to execute the warrant, Martin came to the Hammond residence. He recognized one of the officers and immediately fled. As he ran down the hallway of the apartment house, he tossed several packets of narcotics into an unlighted pantry which opened onto the public hallway. Under the facts and circumstances of this case the Third Circuit had no difficulty finding an abandonment even though the contraband was discarded into a room of the apartment. In the instant case, there were no such circumstances which would suggest an intent to part permanently with control.

3. In *Commonwealth v. Platou*, supra, the law applicable to abandonment is correctly stated but was entirely unnecessary to the resolution of the case. In *Platou*, the police had a warrant to search the apartment of appellant's friend. The police were informed of the true owner of two suitcases and were, therefore, on notice that the suitcases did not belong to the occupant of the apartment. All that the Court held in *Platou* was that the search of a guest's property is beyond the permissible scope of a warrant which authorizes the search of a given premises. Thus, *Platou* really contributes nothing to the already established principles of the "abandonment" exception to the requirement of a warrant supported by probable cause.

Similarly, the Majority's reliance on the "plain view" doctrine is misplaced. The police officer must observe either illegal conduct, evidence of criminal conduct, or contraband from a legitimate vantage point in order that the consequent police conduct, e.g., arrest, search, or seizure, be justified. See *Coolidge v. New Hampshire,* 403 U.S. 443 (1971); *Commonwealth v. Hernley,* 216 Pa. Superior Ct. 177, 263 A. 2d 904 (1970). While it is true that the police officer saw a black bag in plain view, it was not until he had crossed on to appellant Cubler's property, reached into the closure of the dog house, unlatched the bag, and opened it that contraband came into plain view. If the plain view doctrine is read as expansively as the Majority does, there is literally nothing left to the Fourth Amendment for certainly every house, car, pocketbook, or suitcase is in "plain view". The doctrine was never meant to extend so far.

Because neither abandonment nor plain view would justify the search, two additional questions must be answered: 1) was the search and seizure supported by probable cause, and if so, 2) were there sufficient "exigent circumstances" to excuse the officers from the requirement of securing a search warrant.

Probable cause exists when "the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. *Carroll v. United States,* 267 U.S. 132, 162 (1925). In determining whether probable cause exists for the purpose of testing a magistrate's decision to issue a search warrant, we are commanded to measure the *reliability* of the information related by an affiant and the *probative value* of that information. *Spinelli v. United States,* 393 U.S. 410 (1969). In cases involving searches commenced without a warrant, we must apply the same stringent standards in evaluating both the reliability and

the probative value of the facts known to the officer at the inception of the search. If we were to do otherwise, we leave these critical assessments "only in the discretion of the police." *Katz v. United States,* 389 U.S. 347, 349 (1967).

Assuming that facts in the record are sufficient to establish that the officer conducting the search had sufficient reliable and probative information of criminal conduct, we then move to the second phase of our inquiry: whether or not there existed sufficient "exigent circumstances" to excuse the officers from the requirement of securing a search warrant. "It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is *'per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973) (Citations omitted). The well-established exceptions to the requirement of a warrant include: searches commenced with the consent of the party being searched, see *Schneckloth v. Bustamonte,* supra; precautionary weapons searches, see *Terry v. Ohio,* 392 U.S. 1 (1968); *Commonwealth v. Hicks,* 434 Pa. 153, 253 A. 2d 276 (1969); searches commenced when officers are motivated by the good faith belief that they or some other person are in peril, i.e., emergency searches, see *United States v. Preston,* 468 F. 2d 1007 (6th Cir. 1972); *United States v. Barone,* 330 F. 2d 543 (2d Cir. 1964); seizures of evidence in plain view of officers in hot pursuit, see *Warden v. Hayden,* 387 U.S. 294 (1967); searches of vehicles on the roadway under circumstances suggesting the probability that the vehicle will be moved, compare *Chambers v. Maroney,* 399 U.S. 42 (1970), and *Carroll v. United States,* 267 U.S. 132 (1925), with *Coolidge v. New Hampshire,* supra; seizure of evanescent evidence in the process of destruction, compare *Cupp v. Murphy,* 412 U.S. 291 (1973), and *Schmerber v. California,* 384 U.S. 757 (1966), with

*Chimel v. California,* 395 U.S. 752 (1969). Permitting an endless expansion of these exceptions would allow the exceptions to swallow the rule; the Majority is in danger of reading the fragile protections of the Fourth Amendment warrant requirements out of the Constitution. "Exigent circumstances" is the rationale which underpins these narrowly circumscribed exceptions; it is not to be confused with the exceptions themselves. Our courts have never sanctioned warrantless searches of buildings or structures on the land simply because it was inconvenient to secure a warrant. In fact, the decisional law suggests that there is a far greater expectation of privacy in respect to houses and appurtenant structures than that which obtains in respect to other situations and places. See *Chambers v. Maroney,* supra. Although "it is unnecessary and ill-advised to import into the law surrounding the constitutional right to be free from unreasonable searches and seizures subtle distinctions, developed and refined by the common law in evolving the body of property law . . ." *Jones v. United States,* 362 U.S. 257, 266 (1960), it is well-settled that the protections of the Fourth Amendment extend not just to houses but to the curtilage. *Wattenburg v. United States,* 388 F. 2d 853 (9th Cir. 1968) ; *Care v. United States,* 231 F. 2d 22 (10th Cir. 1956). The burden is on the Commonwealth to establish that the search was properly conducted without a warrant and to fit the search within one of the exceptions recognized by our courts. Cf. *McDonald v. United States,* 335 U.S. 451 (1948); McCormick, Evidence, §171 (2d ed. 1972).

Finally, if our examination of the case compels the conclusion that the search at its inception was not supported by probable cause *or* that the failure to secure a warrant under the facts of this case was not excused, then we must not only direct the suppression of the products of the first search but must void the arrest of appellants and the search of appellant Cubler's home. *Wong Sun v. United States,* 371 U.S. 471 (1963).

In the instant case, the Commonwealth fails to establish that the initial search by Officer Chubb was supported by probable cause. The bald assertion by Chubb that the Cubler residence was "under surveillance" is singularly uninformative. We are not told by whom the officer was advised of this surveillance. Neither are we told what facts supported the surveillance. We do not know if the surveillance was instituted on information supplied by an anonymous tipster, whether there was independent corroboration of the information supplied by the informant, and whether there was any reason to credit the source of the information as reliable. The Commonwealth fails in its burden to show the existence of probable cause when it does not establish in the record these underlying facts and circumstances by which we, as a reviewing court, may judge the reliability of the information within the possession of the officer at the inception of the search. Without these facts in the record we must find against the Commonwealth on the issue of the existence of probable cause. Had the officer applied for a warrant before entering onto the Cubler property, he most certainly would have had to establish these facts. Simply because a warrant was not obtained does not excuse the Commonwealth from its burden of establishing the reliability of the information upon which the officer acted.

The other information known to the officer at the time that the search was commenced was that at about the time he approached the front of the Cubler residence a man was seen placing a black bag into a dog house in the rear. While we may credit information provided by a disinterested citizen informant as reliable, we can hardly say that it is sufficiently probative in and of itself to establish probable cause. Cf. *Commonwealth v. Jeffries,* 454 Pa. 320, 311 A. 2d 914 (1973) ; *Commonwealth v. Collins,* 440 Pa. 368, 269 A. 2d 882 (1970). Although it may be some evidence of a guilty conscience, it would not "warrant a man of reasonable caution in the belief

that" an offense has been or is being committed. *Carroll v. United States,* supra at 162. Neither may it be combined with the information that the Cubler residence was under surveillance unless the reliability of that information is established in the record.

Assuming, *arguendo,* that the initial search of the Cubler property was supported by probable cause, the Commonwealth fails to fulfill its burden of bringing the search of the Cubler property within a recognized exception to the warrant requirement. The evidence seized from the dog house was clearly not within the reach of one of the appellants so that it was in danger of being destroyed or moved. The record establishes that there were initially three and eventually six officers on the scene so it can hardly be argued that a stake-out was impossible. In fact, the officers did stake-out the residence while a warrant for a search of the house was secured. We are not dealing with a highly mobile vehicle, a precautionary search for weapons, a consent search, an emergency, or hot pursuit. In short, even if probable cause could be found, nothing in the record would suggest that the failure to secure a warrant was excused by circumstances heretofore recognized by our courts.

Thus, because the Commonwealth does not meet its burden of showing that the facts known to the officer at the inception of the initial search established probable cause or its burden of bringing the search within one of the recognized exceptions to the requirement of a warrant, I am compelled to find that the fruits of that unlawful search must be suppressed. The subsequent search of the Cubler residence must also be voided.

I would therefore reverse the judgment of sentence of the lower court and remand for a new trial.