OPINION
Charles Alexander appeals from his conviction in the Champaign County Court of Common Pleas of possession of LSD, a fourth degree felony.
In the early morning hours of June 12, 1999, Alexander and his brother-in-law, Ian Grove, were drinking at a bar in Dayton, Ohio. Alexander and Grove got into an argument because Grove thought Alexander was flirting with some women in the bar. The argument continued while Alexander drove Grove to Alexander's home in Champaign County where Grove was staying overnight.
At 4:30 a.m. on August 12, 1999, Champaign County Deputy Sheriff Chris Lyons was dispatched to Alexander's home at 12503 St. R. 55 in St. Paris, Ohio. The dispatcher informed Lyons that she had just received a call from a neighbor of the St. R. 55 address saying that a man was chasing him with a firearm. (T. 6).
Lyons testified at the suppression hearing that he arrived at the 12503 S.R. 55 residence and pulled into the driveway. Lyons stated he observed a male and female standing next to the garage of the residence. Lyons stated when he pulled his vehicle up, the male went back into the garage or residence, and as he got out of his car, the male came back out of the residence. (T. 8).
Lyons stated he ordered the defendant Alexander to show his hands, and the defendant complied. Lyons said he asked the defendant where the gun was located and when the defendant didn't respond, he ordered the defendant to go to the ground and handcuffed him. Lyons stated he did this for his safety. Lyons said he then took the defendant back to his cruiser and placed him in the back seat.
Lyons said the complainant, Ian Grove, then appeared in the front of the Alexander residence, and he ordered him to show his hands as well and to drop to the ground. Lyons said Ian Grove then told him that the defendant had grabbed a gun from the residence and pointed the gun at him.
Lyons said that after both male subjects were secured and a backup had arrived, he asked the female about the incident and where the gun was located. Lyons said Jacqueline Alexander, the defendant's wife, told him they had a gun inside the residence, and she took him in the house to get it. Lyons stated he recovered the gun next to Alexander's bed in their bedroom.
Lyons said he transported Alexander to the county jail where he was charged with aggravated menacing. The parties stipulated that during the booking process, Deputy Jim Baldwin recovered twelve sugar cubes containing LSD from the defendant.
The defendant testified and denied pointing any gun at Ian Grove although he admitted that he had just been in a heated argument with his brother-in-law.
Alexander moved to suppress the LSD found after he was arrested contending his warrantless arrest was unlawful in light of Payton v. NewYork (1980), 445 U.S. 573. The trial court overruled the motion finding the defendant's arrest was reasonable "based on the circumstances of this case and based on the information provided to the offices by dispatch and by the on scene acquisition."
In the first assignment of error, Alexander contends the trial court erred in overruling his suppression motion.
Alexander contends that Officer Lyons had no right to arrest him for a misdemeanor offense at his home when the alleged victim was no longer in any danger and there were no exigent circumstances present to justify his warrantless arrest. Accordingly, he argues the trial court erred in not suppressing the drugs which were a fruit of his illegal arrest.
The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, prohibits police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest.Payton v. New York (1980), 445 U.S. 573. A routine arrest is one in which there is ample time to obtain a warrant. The Court in Payton
specifically stated it had no occasion in the case to consider the sort of emergency or dangerous situation described in their cases as "exigent circumstances" that would justify a warrantless entry into a home for the purpose of either arrest or search. The court held in Payton that the Fourth Amendment has drawn a line at the entrance to the house and absent "exigent circumstances" that threshold may not reasonably be crossed without a warrant.
Certain lands adjacent to a dwelling called the "curtilage" have always been viewed as falling within the coverage of the Fourth Amendment. Carev. United States (10th Cir. 1956), 231 F.2d 22.
In State v. Corbett (1973), 516 P.2d 487, the Oregon Court of Appeals made the following observation about a driveway and the defendant's "reasonable expectation of privacy in that area:"
 People commonly have different expectations, whether considered or not, for the access areas of their premises than they do for more secluded areas. Thus, we do not place things of a private nature on our front porches that we may very well entrust to the seclusion of a backyard, patio or deck. In the course of urban life, we have come to expect various members of the public to enter upon such a driveway, e.g., brush salesmen, newspaper boys, postmen, Girl Scout cookie sellers, distressed motorists, neighbors, friends. Any one of them may be reasonably expected to report observations of criminal activity to the police, see, e.g., State v. Stanton, supra. If one has a reasonable expectation that various members of society may enter the property in their personal or business pursuits, he should find it equally likely that the police will do so.
 In this case, there would be no colorable Fourth Amendment question had the police walked up the driveway in order to knock on West's door to ask him some questions. Criminal investigation is as legitimate a societal purpose as is census taking or mail delivery. The "plain view" doctrine would clearly have applied to any observations made on the way to the door.
Id., at 490. In Corbett, the court held, therefore, that the defendant's driveway did not afford the security of an area in which society would recognize an expectation of privacy to be reasonably held.
In Doering v. State (1988), 545 A.2d 1281, the Maryland Court of Appeals held police properly entered curtilage "in the course of a legitimate investigation of a serious crime." Id., at 1286. See also cases cited at Search and Seizure, LaFave (3d Ed) at § 2.3(f) f.n. 194.
In Minnesota v. Olson (1990), 495 U.S. 91, the United States Supreme Court held that an overnight guest in a home has a "reasonable expectation of privacy" in a guest room. The Court in dicta recognized that "a warrantless intrusion may be justified by * * * the risk of danger to the police or to other persons inside or outside the dwelling."Id., at 100.
Even if we assume that the defendant had a reasonable expectation of privacy in his driveway, police had the right to enter the driveway to investigate a reported crime of violence and exigent circumstances clearly justified Officer Lyons' entry in the defendant's driveway to question the defendant and to arrest him.
In State v. Hyde (1971), 26 Ohio App.2d 32, the Summit County Court of Appeals held the officers' entry into a house was justified where officers responding to an hysterical phone call arrived at a residence where there had been family violence the night before, and who were met at the porch by a crying young girl who told the officers: "Get inside, there is trouble in there." Id., at 33. The Court of Appeals held the officers' entry was reasonable under the Fourth Amendment as they were discharging their duty to enter and investigate.
In Slate v. Applegate (1994), 68 Ohio St.3d 348, the Ohio Supreme Court held that exigent circumstances justify a warrantless entry into a residence by police when police are there pursuant to an emergency call reporting domestic violence and where officers hear sounds from inside the residence which are indicative of violence. Justice Pfeiffer wrote on behalf of the court:
 A warrantless police entry into a private residence is not unlawful if made upon exigent circumstances, a "specifically established and well-delineated exceptio[n]" to the search warrant requirement. Katz v. United States (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585. "`The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.'" Mincey v. Arizona
(1978), 437 U.S. 385, 392-393, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290, 300, quoting Wayne v. United States (C.A.D.C. 1963), 318 F.2d 205, 212, certiorari denied (1963), 375 U.S. 860, 84 S.Ct. 125, 11 L.Ed.2d 86. In Wayne, then-federal Court of Appeals Judge Warren Burger explained the reasoning behind the exigent circumstances exception:
 "[T]he business of policemen and firemen is to act, not to speculate or meditate on whether the report is correct. People could well die in emergencies if police tried to act with the calm deliberation of the judicial process." Wayne at 212.
Id., at 349-50.
Officer Lyons clearly had a right to enter the defendant's driveway to investigate whether the defendant was the one reported to police as chasing another male with a gun. Also there clearly were exigent circumstances presented justifying the arrest of the defendant without obtaining an arrest warrant. At the time the arrest occurred, the gun had yet to be recovered, and the victim had reported that the defendant was trying to shoot him. Officer Lyons' arrest of the defendant was reasonable under the Fourth Amendment, and the evidence found on the defendant at the county jail was, therefore, admissible in evidence.
The appellant's first assignment of error is overruled.
In his second assignment, appellant contends the trial court erred in imposing as a condition of community control that the defendant be "clean shaven" with no facial hair. The trial court ordered the defendant to remove his mustache and stay clean shaven "to try to help you with changing not only the way you perceive yourself but others perceive you, so you need to change your desire or need or both to do these things that bring you into court." (T. 10)., Appellant contends this condition is unlawful in that it bears no relation to the crime for which he was convicted and is not reasonably related to rehabilitating him. In Statev. Jones (1990), 49 Ohio St.3d 51, the Ohio Supreme Court held that probation conditions cannot be overly broad so as to unnecessarily impinge on the probationer's liberty. The Court held that trial "courts should consider whether the condition is (1) reasonably related to rehabilitating the offender; (2) has some relationship to the crime of which the defendant is connected; and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the ends of probation." Id., at 53.
In State v. Hicks (Nov. 3, 1999), Logan County App. No. 8-99-10, unreported, the Logan County Court of Appeals held that the trial court abused its discretion when it set as a condition of community control that the probation officer approve of the defendant's hair style and "body artistry" because the condition bore no relation to the defendant's crime of aggravated assault.
We agree with the defendant that the trial court abused its discretion in requiring him to be clean shaven during his probationary period as the condition bore no relation to his rehabilitation, bears no relationship to the aggravated menacing charge of which he was convicted, nor does it relate to conduct which is criminal. The condition, in short, "unnecessarily" impinges on the defendant probationer's liberty.
The assignment of error is sustained.
The judgment of the trial court is reversed in part, and as modified is affirmed. The "Special Condition that Defendant shall have no facial hair and shall remain clean shaven" is hereby ordered struck from the defendant's sentence.
 _____________________ BROGAN, J.
GRADY, P.J., and YOUNG, J., concur.