J-S34026-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DENNIS CRAVEN FOURNEY | : | No. 399 MDA 2021 |

Appeal from the Order Entered February 22, 2021
In the Court of Common Pleas of Clinton County Criminal Division at
No(s): CP-18-CR-0000397-2020

BEFORE: DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED: JANUARY 4, 2022**

The Commonwealth of Pennsylvania appeals from the order granting the motion to suppress filed by Dennis Craven Fourney. The Commonwealth argues that there was no reasonable expectation of privacy in the area in which marijuana plants were discovered because it was not within the curtilage of Fourney's home, and that, because the items were in plain view, the marijuana plants were not the product of a "search." We affirm.

The facts as found by the suppression court are as follows. **See** Trial Ct. Op. and Order, 2/22/21, at 1-5. On July 26, 2020, Pennsylvania State Trooper Timothy T. Wright was on duty for the 10:00 p.m. to 6:00 a.m. shift when he received a dispatch of a domestic dispute on Kinley Hollow Road in Bald Eagle Township, Clinton County, Pennsylvania. **Id.** The dispatch was the result of a 911 call by Shari Lee Truax, who said that Fourney had physically assaulted her. **Id.** Trooper Wright and his partner, Trooper Rishel, drove to the

residence. To access the area, they had to travel down on a long, winding, private road, several hundred feet through a wooded area. *Id.*

The troopers found Truax in a vehicle in a gravel parking lot near the residence, crying, with red marks on her neck and face. *Id.* Fourney was not on the property. N.T., 1/25/20, at 16. Truax gave a written statement and averred that she had been involved in a romantic relationship with Fourney, but discovered, via text message, that he was having sexual relations with another woman that evening. Trial Ct. Op. at 1-5. After declining treatment by emergency medical technicians, Truax told Trooper Wright that she wanted to show him something. *Id.*

Truax led both troopers to a one-story shed or garage approximately 30 yards from the parking lot. *Id.* The garage was used for storage. *Id.* Truax led Troopers Wright and Rishel to the rear of the garage, where they saw nine marijuana plants in plastic buckets. *Id.* Each plant was between four and five feet tall. *Id.* There were no gates or fences near the plants, and they were not visible from the parking lot where Trooper Wright and Truax had conversed. *Id.*

Without applying for a search warrant, seeking permission to search the area, or making an audio or video recording, Trooper Wright seized the marijuana plants. *Id.* Trooper Wright's cruiser was equipped with a recording device, but Trooper Wright was not equipped with a body camera. *Id.* Subsequent to the incident, Trooper Wright filed a criminal complaint charging

Fourney with Manufacturing a Controlled Substance, Simple Assault, and Harassment.[1]

Fourney filed a motion to suppress the marijuana plants, arguing that the search and seizure was unlawful and violated the Fourth Amendment of the United States Constitution. Fourney's Omnibus Pre-Trial Mot., 11/23/20, at 3-5. Fourney contended that Trooper Wright had conducted a warrantless search without probable cause or exigent circumstances of the curtilage of his home. *Id.* The Commonwealth filed a brief in opposition, arguing that the area the plants were found was not curtilage, there was no expectation of privacy, and that the plants were in plain view. Commonwealth's Br. in Opposition, 2/16/21, at 2-6. Following a suppression hearing on January 25, 2021, the court granted Fourney's suppression motion. Order, 2/22/21, at 1.

The Commonwealth raises the following issues for our review:

> A. Whether the lower court committed an error of law/abuse of discretion in finding that the location where the marijuana plants were found was part of the curtilage of [Fourney's] residence?

> B. Whether the lower court committed an error of law/abuse of discretion in finding that the Pennsylvania State Police conducted a search of the property at issue?

Commonwealth's Br. at 6.

The Commonwealth argues that there was no reasonable expectation of privacy in the area where the plants were discovered because the extension

---

[1] 35 P.S. § 780-113(a)(30); 18 Pa.C.S.A. §§ 2701, 2709, respectively.

of curtilage to such an extent was not reasonable, and that there was no search because the troopers saw the plants in plain view from a lawful vantage point. Commonwealth's Br. at 9-10.

We apply the following standard of review to orders granting motions to suppress:

> We consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.
>
> We therefore apply a *de novo* review over the suppression court's legal conclusions.

***Commonwealth v. Gurung***, 239 A.3d 187, 190 (Pa.Super. 2020) (internal citations and quotations omitted). Here, Fourney did not present any evidence at the suppression hearing. We therefore will consider all evidence presented by the Commonwealth and uncontradicted by the record. ***See id.***

"Absent probable cause and exigent circumstances, warrantless searches and seizures in a private home violate both the Fourth Amendment and Article 1, [Section] 8 of the Pennsylvania Constitution." ***Commonwealth v. Gibbs***, 981 A.2d 274, 279 (Pa.Super. 2009).

> Our courts have extended this constitutional protection to the curtilage of a person's home by analyzing "factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private." ***Id.*** at 279. "Curtilage is entitled to constitutional protection from unreasonable searches and seizures as a

- 4 -

place where the occupants have a reasonable expectation of privacy that society is prepared to accept." ***Commonwealth v. Fickes***, 969 A.2d 1251, 1256 (Pa.Super. 2009).

***Commonwealth v. Simmen***, 58 A.3d 811, 815 (Pa.Super. 2012).

"The United States Supreme Court has defined the curtilage as the area 'immediately surrounding and associated with the home' and has stated that the curtilage is 'part of the home itself for Fourth Amendment purposes.'" ***Commonwealth v. Eichler***, 133 A.3d 775, 785 (Pa.Super. 2016) (quoting ***Florida v. Jardines***, 569 U.S. 1, 6 (2013)). In defining curtilage, courts have made a distinction between dwelling houses and businesses:

> Curtilage, discussed above, means a small piece of land, not necessarily enclosed, around a dwelling house and generally includes buildings used for domestic purposes in the conduct of family affairs; the term has no application to any building not used as a dwelling . . .
>
> Whereas, the term "house" within the Fourth Amendment may include a business office or store, . . . the concept of curtilage does not apply to buildings other than dwellings . . . .Thus, the backyard of the defendant's business premises would not be afforded the same protection as part of the curtilage of a dwelling.

***Commonwealth v. Cihylik***, 486 A.2d 987, 992 (Pa.Super. 1985) (quoting ***United States v. Wolfe***, 375 F. Supp. 949, 958-59 (E.D. Pa. 1974) (finding "pit area" close to non-residential building did not constitute curtilage).

Whether or not an area constitutes curtilage is case-specific and depends on a number of factors including "its proximity to the dwelling, whether it is within the enclosure surrounding the dwelling, and its use as an

adjunct to the domestic economy of the family." *Cihylik*, 486 A.2d at 991-992 (internal quotation and citation omitted). *See also Commonwealth v. Loughnane*, 173 A.3d 733, 740 (Pa 2017).

For example, a front porch does not constitute curtilage where there is no gate, front yard, enclosed space preceding or surrounding a porch that abuts a sidewalk. *Gibbs*, 981 A.2d at 279. An unfenced driveway in front of a house, leading from the street to a garage within the residence, is not curtilage. *Simmen*, 58 A.3d at 815-16. Nor is a fenced, gated side yard, with signs indicating that an area is off limits to the public. *Commonwealth v. Bowmaster*, 101 A.3d 789, 792 (Pa.Super. 2014). A field surrounded by woodland, located approximately 1170 feet from a dwelling and not visible therefrom, was not curtilage, despite the presence of "no trespassing signs." *Commonwealth v. Beals*, 459 A.2d 1263, 1267 (Pa.Super. 1983). *See also Commonwealth v. Russo*, 934 A.2d 1199, 1201 (Pa. 2007) (finding bait pile located in plain view 90 feet from defendant's cabin was not within curtilage). *But see Commonwealth v. Lemanski*,529 A.2d 1085, 1091-92 (Pa.Super. 1987) (finding greenhouse attached to and accessible from home, situated 200 feet at the end of a dead-end dirt road in a rural area, was within curtilage and had expectation to privacy).

The suppression court determined that the area where the plants were found was curtilage. The court found that the area was not visible from the gravel parking area in front of the residence and that Fourney "obviously desired that this area would be not visible from the gravel parking area." The

- 6 -

court pointed out that the area was enclosed on one side by a one-story garage, another side by a pile of firewood at least 6 feet tall, and on a third side by woodland. Trial Ct. Op. at 6-7. The court observed that it was not an area where the public would reasonably be expected to be welcome, due to the surrounding woodlands and long and winding lane. *Id.* at 7.

We cannot agree with the suppression court that the area behind the shed was within the curtilage of the home. Fourney's property was set back from the road and was surrounded by woodland, and the plants were located behind the shed. The shed was not used as a dwelling; was not attached to the home; was approximately 90 feet from the home itself; and was not fenced or enclosed in any way. *Cihylik*, 486 A.2d at 992 The expectation of privacy is not the determining factor in whether an area is curtilage. *Id.* at 991-992; *Beals*, 459 A.2d at 1267; *Russo*, 934 A.2d at 1201. Accordingly, based upon the facts elicited at the suppression hearing, we conclude that the trial court erred in determining that the area was curtilage and thus entitled to an expectation of privacy. *Gurung*, 239 A.3d at 190.

The determination that the area was not curtilage does not end our inquiry. The Commonwealth additionally contends that the police did not conduct a search because the plants were in plain view. Commonwealth's Br. at 16. Fourney responds that the troopers did not sufficiently limit their movements to places visitors could be expected to go while on his private property and were trespassing when they viewed the marijuana plants at issue. Fourney's Br. at 27. The trial court, ending its examination at the

determination that the shed constituted curtilage, did not discuss the plain view doctrine in its opinion and order.

"Generally, a warrant stating probable cause is required before a police officer may search for or seize evidence." *Commonwealth v. Bumbarger*, 231 A.3d 10, 19-20 (Pa.Super. 2020). However, the plain view doctrine provides that "when an officer is lawfully in a position to view an item, the incriminating nature of which is immediately apparent, he may legitimately seize that item." *Commonwealth v. Zhahir*, 751 A.2d 1153, 1160 (Pa. 2000). This doctrine applies if:1) police did not violate the Fourth Amendment during the course of their arrival at the location from which they viewed the item in question; 2) the item was not obscured and police could see it plainly from their lawful location; 3) the incriminating nature of the item was readily apparent; and 4) police had the lawful right to access the item. *Commonwealth v. Anderson*, 40 A.3d 1245, 1248 (Pa.Super. 2012). "[T]here is no reason [a police officer] should be precluded from observing as an officer what would be entirely visible to him as a private citizen." *Commonwealth v. Colon*, 777 A.2d 1097, 1103 (Pa.Super. 2001). The plain view doctrine is concerned with the seizure of evidence rather than a search without a warrant. *Id.*

*Commonwealth v. Weik*, 521 A.2d 44 (Pa.Super. 1987), delineates two categories of cases involving the plain view doctrine:

> The first line of cases involves those situations in which the "view" takes place after an intrusion into a constitutionally protected area. Under this line of cases if the original

intrusion is justified, such as by consent, hot pursuit, warrant or other, objects sighted in plain view will be admissible so long as the view was inadvertent.

The second line of cases involves situations where the view takes place before any intrusion into a constitutionally protected area. These cases are distinguishable from the first line of cases in two respects. First, because no intrusion into a constitutionally protected area takes place, Fourth Amendment rights are not involved and the requirement that the view be inadvertent is not applicable. Secondly, the warrantless seizure of evidence cannot be justified by the plain view alone.

*Id.* at 46. "[W]hile the visual observation of an article may not violate any reasonable expectation of privacy, and thus obviate the application of the Fourth Amendment, the seizure of the same article may trigger the protection of the Fourth Amendment." *Commonwealth v. Milyak*, 493 A.2d 1346, 1348 (Pa. 1985) (citations omitted).

In sum, we must determine whether the police had a legitimate reason to intrude on Fourney's property; whether the sighting of the plants falls under the plain view doctrine; and whether the seizure of the plants was lawful under the plain view doctrine. *See*, *e.g.*, *Weik, supra*.

The Commonwealth attempts to analogize the instant case to *Commonwealth v. Cubler*, 346 A.2d 814 (Pa.Super. 1975), where police were investigating a complaint of vandalism by the appellant Cubler's son. *Id.* at 815. During the course of the investigation, police were informed by a neighbor that a third person, Ettien, had thrown a black bag into a doghouse at the rear of his house as officers approached. *Id.* The officer had personal knowledge that the residence was under surveillance for suspicion of drug

activity. He went to the rear of the house in a common walkway and observed the black bag. *Id.* at 816. The officer seized and opened the bag, found suspected narcotics, and, as a result, both appellants were arrested. *Id.* Police obtained a search warrant for the house, and officers executing the warrant found marijuana and pipes. *Id.* On appeal, this Court held that the officer's action of traveling by a common walkway where he saw the bag in plain view did not constitute a search. The officer was thus in a lawful location when he saw the bag, such that no unlawful seizure occurred. The Court concluded that the officer could reasonably infer that criminal activity was afoot from his personal knowledge that the house was under surveillance for drugs and that the bag was abandoned on notice of police approaching. *Id.*

Here, viewing the testimony as a whole, we agree with the Commonwealth that police officers were at least initially legitimately on the premises when they went into the parking lot to respond to Truax's report of domestic violence. However, unlike *Cubler*, the plants were concealed between a shed and a high wall of firewood. The plants were not visible from the main road, the private road, or the gravel parking lot in which Truax gave her statement. *See Colon*, 777 A.2d at 1103. Indeed, the officers would not have discovered the plants, or have any reason to know of them, without Truax's intervention. Thus, although the plants were not within the curtilage of the home, they were on private property in an area in which Forney, a resident of the property, enjoyed a reasonable expectation of privacy.

Although the officers here could lawfully enter the driveway and parking area, they could not look behind the garage. They did not have a warrant or consent to do so and the Commonwealth does not claim exigent circumstances. The plants were not within plain view from the officers' lawful vantage point. The Commonwealth's second issue also lacks merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/4/2022